The STATE of Ohio, Appellee,

v.

VALENTINE, Appellant.

[Cite as *State v. Valentine* (1991), 74 Ohio App.3d 110.]

Court of Appeals of Ohio,
Lawrence County.

No. 1960.

Decided May 14, 1991.

*J. Stewart Kaiser,* Prosecuting Attorney, for appellee.

*Moore, Wolfe & Bentley* and *John Wolfe,* for appellant.

STEPHENSON, Presiding Judge.

This is an appeal from a judgment entered by the Ironton Municipal Court following a plea of no contest finding Robert Valentine, defendant below and appellant herein, guilty of operating a gambling house, in violation of R.C. 2915.02, a first degree misdemeanor. Appellant assigns the following error:

"The court erred in overruling the defendant's motion to suppress the search warrant."

The following facts are pertinent to this appeal. During the afternoon of January 27, 1990, the Lawrence County Sheriff's Department, in conjunction with the Ohio Departments of Liquor Control and Taxation, executed a search warrant of a second floor apartment under appellant's control located in Ironton, Ohio, to search for gambling-related paraphernalia. James L. Howard, Chief of Detectives of the Lawrence County Sheriff's Department, knocked on appellant's door and announced that he was from the sheriff's department. After approximately three seconds, Howard kicked the door in and a search ensued wherein gambling-related items were seized. Howard testified that there were three reasons why he did not wait for someone to answer the door. First, the prosecuting attorney had instructed him not to wait for the door to be opened. Second, there was a concern that certain items such as betting slips could be burned. One officer had a fire extinguisher in case there was a fire. Finally, an undercover policewoman was in the premises at that time and there was concern for her safety.

Appellant was indicted on three gambling counts on February 2, 1990 by the Lawrence County Grand Jury. On February 6, 1990, the case was transferred to the Ironton Municipal Court. Appellant made an appearance on February 22, 1990 and pleaded not guilty. Appellant filed a motion to suppress on March 29, 1990, asserting that by failing to wait before kicking in the door, Deputy Howard violated R.C. 2935.12 and, therefore, all items seized should be suppressed. After a hearing on April 12, 1990, appellant's motion was overruled.[1] Appellant subsequently changed his plea to no contest and was found guilty of one count of gambling in violation of R.C. 2915.02. Appellant was sentenced to a six-month suspended jail term and fined $1,000. The court below journalized the conviction and sentence in an entry filed on June 7, 1990.

 In his sole assignment of error, appellant asserts that the court below erred in failing to suppress the evidence seized pursuant to the search

---

1. Although the motion was overruled, no entry was filed by the court at that time. A *nunc pro tunc* entry was filed on January 31, 1991, ordering judgment entered as of April 12, 1990.

warrant because it was improperly executed. Appellant's contention is based upon R.C. 2935.12, which reads as follows:

"When making an arrest or executing a warrant for the arrest of a person charged with an offense, or a search warrant, the officer making the arrest may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make such arrest or such search, he is refused admittance, but an officer executing a search warrant shall not enter a house or building not described in the warrant."

We first note that there was no argument that the affidavits in support of the search warrant were insufficient or that the search warrant itself was invalid. The only question posited for review is whether there was a violation of R.C. 2935.12, which requires that before a law enforcement officer may break down a door, he must be refused admittance, either actually or constructively. It is beyond question that there was no refusal in the case *sub judice* since the door was broken down three seconds after the officer announced his presence. In *State v. DeFiore* (1979), 64 Ohio App.2d 115, 18 O.O.3d 90, 411 N.E.2d 837, the court held that ten to thirty seconds is not a sufficient time period from which an officer could determine that a constructive refusal had occurred. It is, therefore, manifest that in the case at bar three seconds was an insufficient time for someone to answer the door. Furthermore, we note that the executing officer, James Howard, failed to properly announce himself. R.C. 2935.12 requires "notice of [the officer's] intention to make * * * such search." It is not sufficient for the officer to merely identify himself as a police officer. See *State v. Furry* (1971), 31 Ohio App.2d 107, 60 O.O.2d 196, 286 N.E.2d 301; *State v. Early* (App.1977), 7 O.O.3d 227 (involving an arrest warrant). See, also, 2 Schroeder–Katz, Ohio Criminal Law (1987) 14, Section T. 15. In the case at bar, Howard merely stated that he was from the sheriff's department. Accordingly, from the foregoing, it is clear that there was no compliance with R.C. 2935.12.

A further concern in the case at bar is whether the search was unreasonable and, therefore, violative of the Fourth and Fourteenth Amendments to the United States Constitution. All searches, whether they are pursuant to a statute, must be reasonable under the Fourth and Fourteenth Amendments before any evidence derived therefrom is admissible at trial. We note that R.C. 2935.12 is constitutional, see *Middleburg Hts. v. Theiss* (1985), 28 Ohio App.3d 1, 6, 28 OBR 9, 14, 501 N.E.2d 1226, 1231, and if a search warrant is valid in all other respects, then execution of the warrant pursuant to R.C. 2935.12 is valid. However, if the provisions of R.C. 2935.12 are not followed, then before a search can withstand a motion to suppress, it must overcome statutory and constitutional concerns.

In *Ker v. California* (1963), 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, Justice Brennan, in his dissent, stated that three exceptions exist to the general rule that unannounced police intrusions into private individuals' homes are violative of the Fourth Amendment protection against unreasonable searches and seizures, to wit: "(1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in an activity which justifies the officers in the belief that an escape or destruction of evidence is being attempted." *Id.* at 47, 83 S.Ct. at 1636, 10 L.Ed.2d at 746 (Brennan, J., dissenting). Several courts have held that the above factors, if present, constitute exigent circumstances which justify the officer to bypass the requirements of R.C. 2935.12. See, *e.g., DeFiore, supra,* 64 Ohio App.2d at 117, 18 O.O.3d at 91, 411 N.E.2d at 838; *State v. Roper* (1985), 27 Ohio App.3d 212, 213, 27 OBR 252, 254, 500 N.E.2d 353, 354. Therefore, under either a statutory argument or constitutional argument, the state was required to show the existence of at least one of the exigent circumstances.[2]

■ In the case *sub judice*, the state asserts that two of the circumstances existed. It argues that there was (1) a concern that an undercover officer, who was already in the apartment when Howard kicked in the door, might be in danger, and (2) a concern that evidence might be destroyed. However, at the suppression hearing, the state produced very little evidence to support these assertions.

We first consider the state's claim of concern for the safety of the undercover agent. There must be some basis for the concern. In *Sabbath v. United States* (1968), 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828, the United States Supreme Court held that the agents' failure to comply with Section 3109, Title 18, U.S.Code, which is the federal counterpart to R.C. 2935.12, could not be justified merely by the government's concern that "an announcement may have endangered the informant [who was in the residence at the time of the search] or the officers themselves." The government had no

---

**2.** In light of the officer's failure to properly announce himself, appellant asserts that the existence of exigent circumstances still would not make the search reasonable. In other words, appellant contends that the officer's failure to announce the purpose renders any subsequent search *per se* unreasonable. This clearly is not the law. Once R.C. 2935.12 is violated, focus shifts to whether the search was constitutionally reasonable. Pursuant to Justice Brennan's opinion in *Ker,* such a search would be reasonable if one of the three exigent circumstances was present. There is no requirement that the police officer announce what his purpose is.

factual basis for assuming that the defendant was armed or that the informant was in danger. As noted by a Washington State Appeals Court, "a concern for police safety must be based upon prior knowledge or direct observation that the subject of the search keeps weapons *and* that such person has a known propensity to use them." (Emphasis *sic.*) *State v. Jeter* (1981), 30 Wash.App. 360, 363, 634 P.2d 312, 314. Even evidence that a suspect owned a gun is insufficient where there was no evidence that he had used it or carried it. See *People v. Clark* (1986), 144 Ill.App.3d 7, 10, 98 Ill.Dec. 239, 241, 494 N.E.2d 166, 168.

The following are cases wherein courts have found sufficient evidence of danger to the officers or others to warrant a no-knock search. In *United States v. Barrientos* (C.A. 7, 1985), 758 F.2d 1152, 1159, certiorari denied (1986), 474 U.S. 1062, 106 S.Ct. 810, 88 L.Ed.2d 785, the police had evidence from an informant that the defendant was armed and dangerous. In both *Gilbert v. United States* (C.A. 9, 1966), 366 F.2d 923, 930–932, and *Anderson v. State* (1982), 249 Ga. 132, 136, 287 S.E.2d 195, 199, the defendant sought was wanted in connection with murder and armed robbery. In *Gilbert*, one officer testified that he believed that because of the possible presence of an armed murderer, announcing their presence "might increase 'extremely' the personal perils to the officers." In *People v. Dumas* (1973), 9 Cal.3d 871, 109 Cal.Rptr. 304, 512 P.2d 1208, the court held that a failure to announce was justified where the police had reliable evidence that the defendant not only possessed firearms but habitually answered the door armed with a firearm. Finally, the Washington State appeals court in *State v. Allyn* (1985), 40 Wash.App. 27, 30–31, 696 P.2d 45, 47–48, found the following extensive findings by the trial court were sufficient for the trial court to overrule the defendant's motion to suppress:

" '4. That during December, 1982 and the early part of January, 1983, the said Nelson, III, also observed in the defendant's residence numerous firearms, including but not limited to, a Ruger .22 caliber rifle, two M–1 rifles, a .270 caliber rifle, a .22 caliber rifle and a Ruger .44 caliber pistol.

" '5. That on December 20, 1982, while in the defendant's residence, the defendant told Nelson, III, that "a lot of pigs should be shot" and that Officer Ron Crist should have his "fingernails pulled out."

" '6. That on December 27, 1982, while in the defendant's residence, a co-occupant of the residence, Michael Burns, told Nelson, III, that if the police ever tried to serve a search warrant on the defendant's residence, the defendant would "shoot first."

" '7. That on December 30, 1982, while in the defendant's residence after target practice shooting with Burns, the said Nelson, III, observed the

defendant load a .22 caliber rifle and place it near the front door and that said rifle was observed by Nelson, in a same location, or subsewuent [sic] visits to the defendant's residence, including Nelson's last visit to said residence which was on January 6, 1983.

" '8. That the defendant's residence was also occupied by three dogs, one [G]erman shepherd, one part [G]erman shepherd and one [I]rish setter and said dogs acted as a doorbell, barking and sounding alarm as persons approached the defendant's residence.

" '9. That on January 3, 1983, while in the defendant's residence, Nelson, III, was told by the defendant that he would like to torture some police officers, that some police officers should be killed, and that every time he was harassed by the pigs he went out and bought another weapon.

" '10. That on January 5, 1983, while in the defendant's residence, the said Nelson, III, observed several hand and long guns located on the couch in the living room and that shortly thereafter said firearms had been removed to another unknown location.

" '11. That the defendant was with Warren Shill in May, 1979 when Shill pointed a rifle while inside his vehicle across the street from a tavern and fired it, killing a customer as he exited the tavern.

" '12. That the defendant was convicted in September, 1981 of a crime of Unlawful Delivery of a Controlled Substance while armed with a deadly weapon and during the commission of that crime gave a co-defendant, Eric Hughes, a handgun, telling him to "use it" if he had to while arming himself with another handgun.

" '13. That the defendant was convicted in January, 1982 of the Federal crime of conspiracy to possess an unregistered firearm and that this crime concerned the bombing of a police car, police officer['s] garage and the Chelan County Courthouse.' "

In the case at bar, the only evidence presented with respect to the safety of the undercover agent was the testimony of Deputy Howard when he stated the following at the suppression hearing:

"[W]e had an undercover person in there. A person who probably would not be well known to the people inside this establishment, which was an undercover female police officer. And for her safety we wanted to get in there immediately in case there was a possibility that there could be a problem."

There was no evidence presented that the agent was actually in any danger. Howard did not testify that appellant or anyone else in the building was known to be dangerous. The crime which was being investigated was not one

of violence but was illegal gambling. There was not even any evidence that any weapon was in the building. Finally, we note that the agent was wired so the officers would have known if she had been in any danger.

In sum, there was no evidence concerning the undercover agent's safety which justified executing the warrant without following the mandates of R.C. 2935.12. If we were to hold that exigent circumstances were present from the facts set forth herein, then such circumstances could be claimed in almost every case, thereby vitiating the purposes of R.C. 2935.12, one of which is to protect individuals from forcible entry into the privacy of their homes except under the most limited of circumstances.

We next consider whether the state's second claimed exigent circumstance—*i.e.,* concern that evidence would be destroyed—was sufficient so as to justify the ensuing search without compliance with R.C. 2935.12. There is no dispute that such an exception exists. See *Ker, supra.* However, there has been a disagreement among courts as to what needs to be shown before the police are justified in not announcing themselves. Some courts have held that the fact that the evidence sought is easily destroyed is sufficient to meet the burden. See, *e.g., State v. Roper, supra; Henson v. State* (1964), 236 Md. 518, 204 A.2d 516; *People v. De Lago* (1965), 16 N.Y.2d 289, 266 N.Y.S.2d 353, 213 N.E.2d 659, certiorari denied (1966), 383 U.S. 963, 86 S.Ct. 1235, 16 L.Ed.2d 305. Other courts have instead required, as we did, *supra,* in our analysis with respect to the state's assertion that concern for the safety of the undercover agent was an exigent circumstance, that articulable facts must be introduced which prove that in the particular case there is a strong probability that evidence will be destroyed. See, *e.g., State v. DeFiore, supra; United States v. Levesque* (D.N.H.1985), 625 F.Supp. 428; *Nank v. State* (Fla.App. 1981), 406 So.2d 1282; *People v. Clark, supra; Commonwealth v. Scalise* (1982), 387 Mass. 413, 439 N.E.2d 818.

The debate is based upon the Supreme Court's opinion in *Ker.* The court therein upheld as valid a search by the police wherein they walked into the defendant's home without announcing themselves and without a warrant. The evidence the police officers were seeking was heroin, which is easily destroyed. Professor LaFave in his treatise on search and seizure argues that the plurality opinion in *Ker* did not rely solely on the fact that the evidence was heroin but further emphasized that the defendant's earlier furtive conduct in eluding the police showed that he was in fact expecting the police and "could have immediately undertaken disposal of the narcotics if forewarned by even a knock at the door." 2 LaFave, Search and Seizure (1987) 280, Section 4.8(d).

Professor LaFave asserts that the proper test in determining whether exigent circumstances exist is "whether there is 'reasonable cause to believe that the notice [otherwise required] would endanger the successful execution of the warrant.'" *Id.* at 283 (citing the Model Code of Pre–Arraignment Procedure [1975], Section SS 220.3[3]). We adopt this approach as well and hold that there is no "blanket rule that invokes the destruction of evidence exception whenever the objects named in the search warrant are by their nature amenable to ready disposal or destruction * * *. The police must have probable cause to believe that the evidence will be destroyed, based on other factors uniquely present in the particular circumstances." *Scalise, supra,* 387 Mass. at 421, 439 N.E.2d at 823.

We will now apply the above analysis to the case at bar. Deputy Howard testified at the suppression hearing that because some of the evidence sought was paper, *e.g.,* racing forms and betting slips, and "several trash cans were in the place, [they] thought there was a good chance there could be a fire set, records destroyed." The state argues that this is sufficient to warrant the noncompliance with R.C. 2935.12.

We disagree for several reasons. First, the fact that much of the evidence was paper is not alone sufficient. Second, the presence of trash cans is not added evidence because most people have trash cans, and their purpose is not for setting fires. We note that it would have been significant if there had been present an incinerator or paper shredder, the purpose of which is to destroy documents. Finally, we note that much of what the sheriff's department sought to seize was not easily destroyed by fire, such as gambling devices—*i.e.,* a poker machine—telephones used to take bets, televisions and microwave dishes, etc. We hold as a matter of law the state did not present sufficient proof that evidence would be destroyed if the executing officers had complied with R.C. 2935.12 to justify Deputy Howard's failure to comply with the statute.

Because, from the foregoing, we hold that no exigent circumstances existed, the court below erred in overruling appellant's motion to suppress for the state's failure to comply with R.C. 2935.12. Accordingly, the judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GREY, J., concurs.

HARSHA, J., concurs separately.

HARSHA, Judge, concurring.

I concur in the judgment sustaining appellant's assignment of error and reversing the judgment entered by the court below, and add the following comments concerning the "destruction-of-evidence exception" to the R.C. 2935.12 requirements of prior notice and refusal of admittance.

Initially, I am persuaded that the majority opinion is correct in rejecting the so-called "blanket rule" that the destruction-of-evidence exception is satisfied merely by the fact that the objects named in the search warrant are by their nature amenable to ready disposal or destruction, *i.e.,* gambling records. The rationale for rejecting the blanket rule has been stated as follows:

"Under the Fourth Amendment, a specific showing must always be made to justify any kind of police action tending to disturb the security of the people in their homes. Unannounced forcible entry is in itself a serious disturbance of that security and cannot be justified on a blanket basis. Otherwise the constitutional test of reasonableness would turn only on practical expediency, and the amendment's primary safeguard—the requirement of particularity— would be lost. Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen." *State v. Gastelo* (1967), 67 Cal.2d 586, 588–589, 63 Cal.Rptr. 10, 12, 432 P.2d 706, 708, as cited in 2 LaFave, Search and Seizure (2 Ed.1987) 280– 281, Section 4.8(d).

The issue then is what standard is to be applied in determining the sufficiency of the required showing for the destruction-of-evidence exception. The majority opinion appears to intermix the standards as "strong probability," "reasonable cause," "probable cause," and "good chance." Although the last three standards might be considered to be interchangeable, the "strong probability" standard appears harsher than what even Professor LaFave is advocating. To establish a degree of uniformity in these cases, we should announce the standard as follows:

"[A]nnouncement is not required if, before arriving to search, the police have *particular reasons to reasonably believe* in a particular case *that evidence will be destroyed.*" (Emphasis added.) LaFave, *supra,* at 283–284; see, also, *United States v. Tracy* (C.A. 8, 1988), 835 F.2d 1267; but, cf., *United States v. Nabors* (C.A. 6, 1990), 901 F.2d 1351.

Nevertheless, as the majority opinion appears to recognize, this case, as well as the decision of the First District Court of Appeals in *DeFiore, supra,* seems to conflict with the decision of the Ninth District Court of Appeals in *Roper, supra,* and a certification would seem appropriate.