JOURNAL ENTRY and OPINION
Appellant State of Ohio appeals the trial court's decision granting appellee Anthony Williams' motion to suppress evidence gathered by Warrensville Heights Police pursuant to a search warrant based on information obtained from F.B.I. agents which the agents gathered after a warrantless entry into appellee's hotel room. Appellant brings this appeal pursuant to Crim.R. 12(J) and assigns the following two errors for our review:
 I. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S EVIDENTIARY HEARING.
 II. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
The Cuyahoga County Grand Jury indicted appellee Anthony Williams on June 14, 1999 on three counts of possession of drugs, trafficking in marijuana, preparation of drugs for sale, and possessing criminal tools. The State based these charges on evidence found during the execution of a search warrant by Warrensville Heights Police officers. Williams filed a motion to suppress the evidence found during the search as fruit of an illegal warrantless entry by F.B.I. agents. Over the objections of the prosecution, the trial court held a hearing on Williams' motion.
At the hearing, Williams presented three witnesses, Jeremy Democko, Warrensville Heights Police Officer Douglas Waggoner and himself. Williams testified he arrived at Cleveland Hopkins Airport on April 17, 1999. He stated his cousin, Lee Carter, picked him up from the airport and dropped him off at the Econo Lodge where Williams rented two rooms. A man and two women from California joined Williams at the motel.
Williams testified that on June 19, 1999, Jeremy Democko came to the room around 9:30 A.M. Approximately one hour later, F.B.I. agents entered his motel room. Williams testified the agents entered without consent and without a warrant. The agents told everyone to freeze, patted the occupants down, and started looking around the room and through some of the luggage. Williams testified the agents asked if they could search the room, and he told them they could not. The agents then took Williams into another room and questioned him for 15 to 20 minutes about a bank robbery. Williams denied any involvement in the bank robbery. Williams stated the F.B.I. agents never asked him any questions about marijuana.
Williams testified that after questioning him, the F.B.I. agents returned him to his motel room. Williams stated he did not leave the room again until the Warrensville Heights police arrived and arrested him some 30 to 45 minutes later. Williams testified police presented him with a search warrant for the motel room at the jail on April 20, 1999, the day following his arrest. Jeremy Democko testified that he arrived at the hotel around 9:30 A.M. He stated that an hour later, F.B.I. agents entered the hotel room without the consent of any of the room's occupants. Democko testified that he was smoking marijuana when the F.B.I. agents entered the room. He testified the F.B.I. agents patted the occupants down, looked around and then removed Williams from the room.
After returning Williams to the room, the F.B.I. agents took Democko outside for questioning. Democko said he gave the F.B.I. agents permission to search his car and they found two pounds of marijuana in the trunk. Democko testified he told F.B.I. agents he purchased the marijuana from Williams. Democko testified the F.B.I. agents said they were not interested in the marijuana and they would turn that matter over to the Warrensville Heights Police Department. When the Warrensville police arrived, they took Democko to the police station. Democko stated no one from the Warrensville police department questioned him at the motel.
Officer Waggoner of the Warrensville Heights Police Department testified that he arrived at the motel before noon. Waggoner testified he spoke with F.B.I. agents who told him they entered Williams' motel room under exigent circumstances to identify and interview possible bank robbery suspects. He further testified F.B.I. agents told him Democko, one of the occupants of the room, voluntarily told them about the marijuana purchase and a sizable amount of marijuana as well as money remained in the room. Waggoner testified, after talking with F.B.I. agents, he swore out a warrant affidavit stating the following as factual support:
 The Warrensville Heights Police Department were noted [sic] by the FBI that they had stopped a male who had just purchased two pounds of marijuana from a male known as Anthony Williams in room 222 * * *. The male stopped indicates further that there is a large sum of currency and drugs in room 222 * * *.
Waggoner stated he did not question Democko about the drugs or the money. Waggoner testified he swore out the warrant based on the information provided by the F.B.I. agents.
Waggoner also testified he, along with two other Warrensville Heights police officers, executed the warrant between 3:00 PM and 4:00 PM on April 19, 1999. The officers found $13,000 in cash and approximately 20 pounds of marijuana in the luggage. After conducting the search, the officers served the warrant on Williams at the jail.
The State called one witness, F.B.I. Special Agent Wren. Wren testified that on the morning of April 19, 1999, he received instructions from his supervisor to go to the Econo Lodge in Warrensville Heights for the purpose of identifying and interviewing Williams concerning his participation in a bank robbery. Wren's supervisor told him that he suspected Williams of masterminding and participating in a robbery that occurred in Mentor, Ohio the previous month. Additionally, Wren's supervisor told him Williams belonged to an L.A. street gang called the Crips, and possessed approximately 20 to 50 pounds of marijuana. Wren stated his supervisor said that a young white male from the Youngstown area might be purchasing the marijuana and that Williams planned to beat the white male after the purchase. Wren testified that the information provided him by his supervisor came from Lee Carter who had been arrested en route to rob a bank in Alabama.
Agent Wren explained that the F.B.I. agents had no interest in the drugs. He testified he went to the motel to identify Williams and to illicit incriminating information from him regarding his role in the robbery. When asked how he planned to accomplish this goal, Agent Wren testified he planned to go to the motel, determine if Williams resided there, knock on the door, ask to speak to him, and go from there. Wren testified he did feel that he had probable cause to obtain an arrest warrant.
Wren testified he arrived at the motel with two other F.B.I. agents. Wren determined Williams had checked in and got the pass key to Williams' room from the manager in case of emergency. Walking toward Williams' room, Wren noticed what he described as "an overwhelming smell of marijuana" coming from Williams' room. Wren testified, based on the strong smell of marijuana and his experience with bank robbers and drug dealers, that he decided to deviate from his plan. Instead of knocking on the door and asking to speak with Williams, Wren testified he used the pass key to enter the room.
Wren testified, after securing the room and identifying the occupants, he asked Williams' permission to search. Williams denied his request. Contrary to the testimony of Williams and Democko, Wren testified he removed Democko from the room first. Wren testified Democko then volunteered information regarding his drug purchase. Democko also permitted the agents to search the trunk of his car where the agents found two pounds of marijuana. Additionally, Wren testified Democko told him that Williams had large quantities of drugs and money in the room. Based on this information, Wren contacted the Warrensville Heights Police Department.
At the close of the hearing, the trial court concluded that the F.B.I. agents violated Williams' Fourth Amendment rights when they entered his motel room without a warrant. The trial court found the smell of marijuana failed to provide the agents with exigent circumstances justifying their warrantless entry. The court concluded that the State failed to present evidence indicating that an independent source would have provided the Warrensville police with information to validate the search warrant; therefore, the court granted Williams' motion to suppress.
In its first assignment of error, the State alleges the trial court erred in granting Williams an evidentiary hearing on his motion to suppress. The State contends that Williams' motion to suppress failed to allege facts entitling him to a hearing because the seizure occurred pursuant to a search warrant. This argument lacks merit.
A trial court may hold an evidentiary hearing if it finds that the defendant's motion provides sufficient legal and factual support to place the prosecutor and the court on notice of the issues to be decided. See State v. Shindler (1994) 70 Ohio St.3d 54,58, 636 N.E.2d 319, 322.
In the instant case, Warrensville Heights police obtained the search warrant based on an affidavit alleging that the information regarding drug activity at the motel came from the F.B.I. In his motion to suppress, Williams alleges that the F.B.I. agents entered his motel room without probable cause or a search warrant; that the F.B.I. agents searched his room without consent; and that the items seized should be suppressed as fruits of the poisonous tree. We agree with the trial court's finding that Williams stated facts sufficient to place the prosecution on notice that Williams sought to challenge the legality of the F.B.I. agents' conduct, not the facial validity of the warrant. Accordingly, this court overrules the State's first assignment of error.
In his second assignment of error, appellant alleges that the trial court erred in granting Williams' motion to suppress. Our standard of review of a trial court's granting or denying of a motion to suppress requires us to accept the trial court's findings of fact if supported by competent, credible evidence. State v.Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172. Then, without deference to the trial court, we must decide whether the trial court applied the appropriate legal standard. Id.; State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906.
In the instant case, this Court must determine whether the trial court applied the appropriate legal standard when it decided to suppress the marijuana obtained pursuant to a search warrant as indirect product of unlawful police conduct. The threshold question for our review is whether the F.B.I. agents' warrantless entry into Williams' motel room falls within the exigent circumstances exception to the Fourth Amendment warrant requirement. We conclude that it does not.
The Fourth Amendment to the United States Constitution and the Section 14 Article I of the Ohio Constitution secure an individual's right to be free from unreasonable searches and seizures, and require warrants to be particular and supported by probable cause. Warrantless entry by law enforcement personnel into premises in which an individual has a reasonable expectation of privacy is per se unreasonable, unless, it falls within a recognized exception to the warrant requirement. Minnesota v.Olson (1990), 459 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (over night guest in home has reasonable expectation of privacy); Paytonv. New York (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639;State v. Miller (1991), 77 Ohio App.3d 305, 602 N.E.2d 296 (an individual has reasonable expectation of privacy in a hotel room)
The existence of exigent circumstances, coupled with probable cause, is a well recognized and carefully delineated exception to the warrant requirement. Olson, 459 U.S. at 100, 110 S.Ct. at 1690,109 L.Ed.2d 85; Welsh v. Wisconsin (1984), 466 U.S. 740, 749,104 S.Ct. 2091, 2097, 80 L.Ed.2d 732. The United States Supreme Court has identified four situations which form the appropriate standard for determining the existence of exigent circumstances; (1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent escape, and (4) the risk of danger to police or others. Id.
Law enforcement agents "bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches and arrests." Welsh, 466 U.S. at 749, 104 S.Ct at 2097,80 L.Ed.2d 732. The State must "demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." Id. at 750, 104 S.Ct. at 2098,80 L.Ed.2d 732. As the Supreme Court noted in Welsh, that presumption of unreasonableness is difficult to overcome when the government's interest is only to arrest for a minor offense. Id. Accordingly, this Court has held that the smell of burning marijuana provides probable cause as to the commission of a minor misdemeanor, and thus, does not justify a warrantless entry into a home. City ofNorth Royalton v. Bramante (April 29, 1999), Cuyahoga App. No. 74019.
In the instant case, the State argues that under a totality of circumstances approach, the risk of danger posed by a suspected armed bank robber provided the exigent circumstances justifying the F.B.I. agents' warrantless entry. The State argues that because the F.B.I. wanted to question Williams regarding an armed bank robbery, and armed bank robbers usually carry weapons, it was reasonable for the agents to assume that he was armed. Additionally, the State argues that since the F.B.I. agents did not have an address for Williams, they needed to act fast to prevent him from leaving the jurisdiction before they had an opportunity to fully identify him.
However, the risk of danger exigency exception does not apply to such generalizations regarding the type of crime, nor does it apply to an officer's subjective belief. Rather, the risk of danger must exist based on objective facts or direct observations regarding the actions or proclivities of the specific suspect. SeeRichards v. Wisconsin (1997), 520 U.S. 385, 117 S.Ct. 1416,137 L.Ed.2d 615; State v. Valentine (1991), 74 Ohio App.3d 110,598 N.E.2d 82. Further, there must be some real, immediate, and serious consequence, if the officer postponed action in order to get a warrant for the risk of danger exigency to apply. SeeMinnesota v. Olson, supra.
In the instant case, Williams was unaware of the agents' presence and the State presented no evidence that Williams planned to leave the jurisdiction on the day of his encounter with the agents. Nothing prevented the agents, upon determining that Williams was on the premises and certainly upon smelling marijuana coming from his motel room, from contacting the Warrensville Heights Police Department and requesting assistance, placing the premise under surveillance, and seeking a warrant. Consequently, the trial court correctly determined that officer Wren lacked exigent circumstances when he initially entered Williams' room.
We must now decide whether the trial court properly excluded the marijuana evidence recovered by the Warrensville Heights police pursuant to search warrant. We conclude that it did.
"[T]he exclusionary rule reaches not only primary evidence obtained as a result of an unlawful search or seizure, but also the derivative evidence which is the indirect product of unlawful police conduct." State v. Carter (1994) 69 Ohio St.3d 57, 66,630 N.E.2d 355, 363, citing Segura v. United States (1984),468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599. The exclusionary rule applies up to the point that the connection between the unlawful conduct and the discovery and seizure of evidence is so attenuated as to dissipate the taint. Where the police have an independent source for the discovery of the evidence, the taint of illegality dissipates. Silverthorne Lumber Co., Inc. v. United States (1920),251 U.S. 385, 40 S.Ct. 182, 64 L.Ed.2d 319. Consequently, following an illegal entry, evidence obtained pursuant to a search warrant must be excluded, unless the police based the warrant affidavit on a source of information independent from the unlawful conduct. Murray v. United States (1988), 487 U.S. 533,108 S.Ct. 2529, 101 L.Ed.2d 472; Segura and Carter, supra. For the independent source exception to apply, the information presented in the warrant affidavit must be wholly unconnected to the illegal entry, and the decision to seek the warrant must not be prompted by information gained during the illegal entry. Murray, Segura, andCarter, supra.; State v. Miller (1991) 77 Ohio App.3d 305,602 N.E.2d 296.
In the instant case, the information presented in the affidavit for the warrant is based wholly on the information gained from the F.B.I. agents' unlawful entry into Williams' motel room. Further, the Warrensville Heights police officer's decision to seek the warrant was prompted only by the information gained from the F.B.I. agents. Based on these facts, the trial court found that the Warrensville Heights police lacked an independent source needed to dissipate the taint of the F.B.I.'s conduct. We conclude that the trial court applied the appropriate legal standard when it decided to suppress the marijuana evidence.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY. P.J., and MICHAEL J. CORRIGAN, J., CONCUR.
 ____________________________ PATRICIA ANN BLACKMON, JUDGE