JOURNAL ENTRY AND OPINION
Defendant Richard appeals from his conviction for possession of narcotics in violation of R.C. § 2925.11 and preparation for sale in violation of § 2925.07. For the reasons set forth below, we affirm.
Defendant Richard was indicted on the above charges as well as for trafficking in cocaine (R.C. 2925.03) and possession of criminal tools (R.C. 2923.24). Prior to trial, Defendant filed a motion to suppress and for the return of illegally seized property, alleging a lack of probable cause in the issuance of the search warrant obtained by the Cleveland Police Department.
At the suppression hearing, Detective Andre Haynesworth of the Cleveland Police Department testified that on July 9, 1999 he executed a search warrant at 1586 E. 84th Street, Cleveland, Cuyahoga County, Ohio. According to Detective Haynesworth, the SWAT team gained initial entry by knocking and announcing their presence. Receiving no answer, the SWAT team entered the premises. Inside the home, the law enforcement officers found the defendant upstairs. They secured the premises and proceeded to thoroughly search the premises for any evidence of illegal drug activity.
At the hearing, the defense introduced photographs to support the proposition that the police unreasonably executed the search warrant by causing excessive damage to the premises. Additionally, the defendant testified that he did not hear the police knock and announce before entering the premises.
Following the hearing on the motion, the court denied the motion to suppress the evidence and for the return of illegally seized property. The matter proceeded to a jury trial.
At trial, the state presented testimony of Detective Tommie Hall of the narcotics unit of the Cleveland Police Department. He stated that as a result of anonymous citizen complaints concerning drug trafficking at the residence, the house had been under surveillance on more than one occasion for over one month. According to Detective Hall, a moderate volume of pedestrian and vehicular traffic was seen at the residence while under surveillance. Detective Hall stated in his affidavit that he witnessed individuals approach the house and a female named "Dejia" would come out to the front porch, re-enter the house for a short period of time, and then return to the front porch. The female would then conduct a hand to hand transaction with customers from the front porch of the aforementioned premises. The detective stated that, in his experience, such activity is indicative of drug trafficking.
Subsequently, a confidential reliable informant (CRI) working with the Cleveland Police Department made a controlled drug purchase from the home on July 8, 1999. Detective Hall testified that the informant was picked up at a predetermined location, was searched and found to be free of money, drugs and/or other contraband. The CRI was given a sum of photocopied US currency, was taken to 1586 E. 84th Street and walked up to the front of the premises. The CRI was met by the defendant at the premises. The detective further testified that the defendant went into the house for a short time, came back out made an exchange with the CRI, and then returned to the house. Hall testified that he never lost sight of the CRI during the whole transaction. The detective testified that the CRI brought back a rock of what was later determined to be crack cocaine. Hall testified that he then searched the CRI and found the CRI to be free from other contraband and/or money. The identity of the CRI was not disclosed at any point. The detective testified that he conducted additional surveillance after the controlled buy.
Thereafter, the Cleveland Police Department obtained a search warrant for the premises and executed it on July 9, 1999. At trial, Detective Hall testified that after a thorough search the SWAT team discovered 32 rocks of what was suspected, and what was later confirmed to be, crack cocaine. Additionally, they found next to the rocks of crack cocaine roughly $12,000 in cash, a Planter's peanuts can with crack cocaine residue on it and baggies in it, and six safety deposit box keys. Detective Hall testified that in his experience, people who traffic in cocaine prepare their quantities in plastic bags. The police department also found on the premises a scale commonly used to weigh drugs.
Thereafter, the Cleveland Police Department obtained a search warrant for the safety deposit boxes for which they had found keys. After a search, the police discovered $124,289 cash in the safety deposit box at the Huntington National Bank. Additionally, they found $49,000 cash in the safety deposit box at Firstar Bank.
The defense presented testimony of a neighbor who stated that during the period of time when the defendant moved into her new home, she did not see any drug activity at the defendant's house.
The defense also presented testimony of co-defendant, Dacia Love with regard to both defendants' whereabouts on July 8, 1999, the day of the controlled buy. Her testimony indicated that she was busy that day coming and going from the house with her fiancee and co-defendant, picking up furniture and home improvement supplies. She denied participating in the controlled buy. The defendant also testified that law enforcement officers had caused excessive damage to the premises while executing the search warrant.
Defendant was found guilty by the court of possession of crack cocaine and for preparation of drugs for sale. He presently appeals, raising five assignments of error.
 I. THE COURT ERRED WHEN IT DENIED THE MOTION TO SUPPRESS AND WHEN IT FAILED TO ORDER THE RETURN OF ILLEGALLY SEIZED PROPERTY.
In his first assignment of error, defendant asserts that the trial court erred in denying his motion to suppress the evidence on the basis that the affidavit in support of the search warrant was insufficient to establish probable cause. The defendant asserts that the affidavit in support of the search warrant for 1586 E. 84th Street and the safe deposit boxes in defendant's name at FirstStar Bank were not supported by probable cause. Defendant submits that, as a result, the search of the home and the safe deposit boxes were unreasonable and any items seized during the search were inadmissible and should have been suppressed.
The Fourth Amendment to the United States Constitution guarantees people the right to be free from unreasonable searches and seizures and provides that no warrants shall issue but upon probable cause. In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the duty of the reviewing court is to determine whether the issuing judge had a substantial basis to conclude that probable cause existed. State v. George (1989), 45 Ohio St.3d 325, paragraph two of the syllabus, following Illinois v. Gates (1983),462 U.S. 213, 238-239. Neither a trial court nor an appellate court should substitute its judgment for that of the issuing magistrate by conducting a de novo review. Id. In making the determination of whether there was a substantial basis to conclude that probable cause existed, the reviewing court must:
 Make a practical, common-sense decision whether given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
Id. at paragraph one of the syllabus. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, reviewing courts should afford great deference to the issuing magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.Id.
In the case sub judice, the affidavit in support of a search warrant for 1586 E. 84th Street stated the following facts, in part:
 1. During the past month, anonymous citizen complaints were received concerning drug trafficking at the above premises.
 2. * * * during surveillance conducted since June 4, 1999, affiant has observed moderate pedestrian and vehicular traffic going in and out of the premises. Individuals would drive up and wait at the location and a black female known as "Dejia" would exit the aforementioned premises and would return to the front porch area * * * "Dejia" would conduct a hand to hand transaction with customers from the front porch * * * This activity occurs mostly in the afternoon. In the experience and training of affiant, such activity is indicative of drug trafficking. The customers would immediately leave the vicinity either by vehicle or by foot.
 3. Within the past seventy-two hours, affiant contacted a Confidential Reliable Informant (CRI), who is known by the Cleveland Police Department. * * * CRI was taken to the vicinity of the above-described premises. Affiant accompanied CRI to the aforementioned premises in an undercover vehicle. CRI was searched, and found to be free of money, drugs, and/or other contraband. CRI was then given a sum of United States currency from which the serial numbers had been recorded. Affiant observed CRI approach the aforementioned premises. Affiant observed the subject known as "Dejia" sitting on the front porch of the aforementioned premises. CRI spoke with "Dejia" and handed U.S. currency to subject known as "Dejia" for purported crack/cocaine. "Dejia is described as a black female, approximately five feet, seven inches, late twenties, 125 lbs. With a light brown complexion and red hair. Affiant observed subject "Dejia" enter the aforementioned premises and return to the front porch. CRI remained on the front porch. Affiant observed "Dejia' [sic] pass an item to CRI's hand. CRI immediately returned to the undercover vehicle. CRI handed affiant the purported crack/cocaine * * *.
Based on the foregoing, we find that the issuing magistrate was justified in issuing a search warrant. Citizen complaints, law enforcement surveillance and a controlled buy set up at the home would indicate to an issuing magistrate that there was a fair probability that drugs would be found on the premises. It should also be noted that the information contained in the affidavits was not stale; surveillance and the controlled buy took place just prior to the issuance of the search warrant.
We find that the issuing magistrate had a substantial basis to believe there was a fair probability that drugs would be found at the home.
The affidavit in support of a search warrant for the safe deposit boxes stated the following facts, in part:
 1. On July 9, 1999, affiant and members of CPD had occasion to arrest a male * * * in connection with trafficking in cocaine. At the time of the arrest, numerous safety deposit keys were located in the couples upstairs bedroom. Keys list to a safety boxes. [sic]. Found in the premises were 32 rocks of suspected crack cocaine, a scale commonly used to weigh controlled substances and $12,000 cash.
 2. In the course of the investigation, affiant has learned that * * * and Dacia K. Love reside together and are jointly involved in the ongoing sale and distribution of crack cocaine. Ms. Love was not at the premises at the time of the execution of the warrant but was at the premises and actively involved in the sale of crack cocaine that led to the issuance of the search warrant.
 3. * * * The safety deposit agreement is in the name of Dacia K. Love.
 4. In the experience of affiant, persons who traffic in illegal drugs frequently keep records of illegal transactions, and evidence of communications used in the furtherance of drug trafficking activity as well as drugs and cash in places away from the place where the drugs are sold.
Based on the facts presented, we find that the issuing magistrate had a substantial basis to believe there was a fair probability that the safety deposit box would contain contraband and/or evidence of illegal drug trafficking.
The defendant argues in his brief that a $100 purchase of drugs in front of a home does not create probable cause to believe any money that can be connected to the premises is subject to seizure. However, this argument does not address the facts of this case. As stated above, law enforcement officers discovered safety deposit keys in defendant's bedroom next to $12,000, 32 rocks of crack cocaine, a can with crack cocaine residue and baggies. Additionally, the police found a scale commonly used to weigh drugs. These facts indicate that there was a fair probability that the safety deposit boxes would contain contraband and/or evidence of illegal drug trafficking.
Having determined that the issuing magistrate properly ascertained that probable cause existed for both the house and the safe deposit boxes, we overrule this assignment of error.
Assignment of error I is overruled.
II.
 THE COURT ERRED IN FAILING TO SUPPRESS THE EVIDENCE SEIZED IN THE WAKE OF THE UNLAWFUL ENTRY AND THE UNLAWFUL EXECUTION OF THE SEARCH WARRANT IN THIS CASE.
III.
 THE COURT ERRED WHEN SHE RESTRICTED THE DEFENSE'S EFFORTS TO SHOW THAT THE OFFICERS' ACTIONS WHILE EXECUTING THE WARRANT WERE UNREASONABLE BECAUSE OF THE INTOLERABLE ACTIONS DIRECTED TOWARD THE OCCUPANTS AND THE UNNECESSARY DESTRUCTIVE DAMAGE DONE TO THE PREMISES.
Within these assignments of error, defendant alleges that the law enforcement officers failed to knock and announce before entering his home, that they caused excessive damage to his home and therefore the search was unreasonable and all evidence seized should be suppressed. The defendant also alleges that the trial court erred in restricting the defense's presentation of evidence in support of an unreasonable search.
We first address law enforcement's alleged failure to knock and announce prior to entering the defendant's home. As to the requirement that the police knock and announce themselves before entering, R.C. 2935.12
provides in part, as follows:
 (A) When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the arrest or summons may break down an outer or inner door or window of a dwelling house or other building, if after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance * * * [Emphasis added.]
If the provisions of this statute are not followed, the search may be constitutionally unreasonable and the results of the search may be suppressed. State v. Valentine (1991), 74 Ohio App.3d 110, 113. However, where the police knock and announce themselves but are not admitted, they may forcefully enter. State v. Litvin, 1999 Ohio App. LEXIS 3694,(Aug. 12, 1999), Cuyahoga App No. 74563 74564, unreported, citing State v.Amundson (1996), 108 Ohio App.3d 438, 440. State v. Morgan (1988),55 Ohio App.3d 182, 185.
This court set forth the standard of review of a trial court's judgment with regard to a motion to suppress in State v. Curry (1994),95 Ohio App.3d 93, 641 N.E.2d 1172. It states:
 In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906.
In this instance, the state presented evidence that the police did knock and announce their presence and that they had a search warrant. Detective Andre Haynesworth testified that he was present when the search warrant was executed at the defendant's home, that the Cleveland Police SWAT team initially gained entry into the home and described the SWAT team's entry procedure. Additionally, he testified that he heard the police knock and announce their presence before entering:
 Q. Were you present when the SWAT team entered the home on this particular date?
A. Yes.
 Q. And do you know whether or not the SWAT team made any announcements or attempted to gain access to the home prior to forcing entry?
 A. Yes. Normally when they come in the first thing they do is they will hit the door once or twice, and then after they announce police, they will proceed to use a ram or what we call a hooligan tool to enter the door based on the type of entry they need to do.
 Q. So did the SWAT team hit the door, knock on the door prior to forcing entry?
 A. Yes, it was enough people outside around to see that. [sic].
Q. And did they announce that they were the police?
A. Yes.
Q. Was there a response from the home?
A. There was no response from inside at the time.
(T. 60, 61) The police forcibly opened the door after there was no response. The defense insisted, however, that the police did not knock and announce prior to entering and offered testimony of the defendant who was upstairs in the bathroom when the police entered.
In the case sub judice, the court found the state's testimony to be more credible than the defense's testimony and determined that law enforcement officers did knock and announce their presence before entering defendant's home. Based on the evidence presented, we conclude that the trial court's determination is supported by credible evidence. Accordingly, with regard to the law enforcement's alleged failure to knock and announce their presence before entering the home, this error is not well taken.
We next address the issue of whether law enforcement officers executed the search warrant in such a manner as to render the search unreasonable and thus subject to suppression of the evidence. The defendant alleges that the premises were unnecessarily and unreasonably ransacked during the execution of the search warrant and that the trial court was reluctant to evaluate evidence in this regard. However, the record indicates that the trial court overruled the state's objection to the admission of photographs proffered in support of excessive damage. While the trial court did not allow in every photograph as evidence, it did evaluate several of the photographs as evidence proffered by the defendant. The trial court determined, after hearing testimony and allowing photographs into evidence, that the damage caused to the premises was not so excessive as to render the search unreasonable. The photographs indicate that law enforcement officers did cause some damage to the premises. However, the damage caused was not excessive. It is well known that drugs are small and easy to conceal and that it is sometimes necessary for police to search in areas which are difficult to access. As a result, some damage to walls and other areas may occur during the execution of search warrants, as is the case here. Assuming arguendo that the photographs accurately depict the premises after the police conducted the search, they do not support the conclusion that law enforcement officers conducted the search in such a manner as to render it unreasonable.
Based on the evidence presented, we conclude that the trial court's determination is supported by competent credible evidence. Therefore, this assignment of error is overruled.
 IV. THE COURT ERRED WHEN IT REFUSED TO REQUIRE THE STATE TO DIVULGE THE IDENTITY OF THE ALLEGED, ARGUABLY PHANTOM, INFORMANT.
In his fourth assignment of error, the defendant alleges that the trial court erred in refusing to order the state to reveal the identity of their informant.
In Roviaro v. United States (1957), 353 U.S. 53, the Supreme Court refused to adopt a fixed rule regarding disclosure and instead noted:
 The question calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
Id., at 62. Moreover, the defendant bears the burden of establishing the need for disclosure. State v. Brown (1992), 64 Ohio St.3d 649, 653. That is:
 The identity of an informant must be revealed to a criminal defendant when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges.
State v. Williams (1983), 4 Ohio St.3d 74, syllabus; State v. Parsons
(1989), 64 Ohio App.3d 63, 69. Generally, when the degree of participation of the informant is such that the informant virtually becomes a state's witness, the balance swings in favor of requiring disclosure of the informant's identity. Williams, supra. Conversely, where disclosure would not be helpful or beneficial to the accused, the identity of the informant need not be revealed. Id. at 76.
Finally, a trial court's decision concerning the disclosure of the identity of a confidential informant will not be reversed absent an abuse of discretion. State v. Feltner (1993), 87 Ohio App.3d 279, 282. The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983) 5 Ohio St.3d 217, 219.
In the case sub judice, the testimony of the informant is not vital to establishing an element of the crime. The informant participated in a controlled buy, which gave the police probable cause to believe that drugs and/or other contraband would be found on the premises. As a result of the controlled buy, previous surveillance of the home and citizen complaints, law enforcement officers obtained a search warrant, found crack cocaine on the premises, and charged defendant possession of drugs in violation of R.C. 2925.11 and preparation of drugs for sale in violation of R.C. 2925.07.
If the defendant had been charged with selling crack cocaine to the CRI on the date of the controlled buy, the CRI's testimony would be vital to establishing an element of the crime. However, this is not the case. Any testimony of informant would not establish an element of possession or preparation of drugs for sale, of which defendant was convicted.
Similarly, testimony of informant would not be helpful or beneficial to the defendant in preparing or making a defense to criminal charges. Again, the defendant was charged with possession of crack cocaine and preparation for sale. There is no testimony on the part of the informant that could exculpate the defendant on this charge. The CRI could only testify to his participation in the controlled buy which occurred on a different day. It is of critical significance in this case that the informant could not provide any exculpatory evidence with regard to the other bases for probable cause, namely the previous surveillance conducted at the home and the citizen complaints.
Accordingly, we are unable to conclude that the trial court abused its discretion in denying the defendant's motion to disclose the identity of the confidential reliable informant.
 V. THE COURT ERRED IN ALLOWING THE JURY, DESPITE DEFENSE OBJECTIONS, TO CONSIDER AS SUBSTANTIVE PROOF OF GUILT THE FACT THAT VARIOUS SAFETY DEPOSIT BOXES WERE SEARCHED AND A CONSIDERABLE AMOUNT OF MONEY WAS FOUND.
In his fifth assignment of error, the defendant asserts that the trial court allowed in evidence in violation of Evid.R. 401, 402 and 403. We disagree.
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid.R. 401. Evid.R. 402 provides that evidence that is not relevant is inadmissible. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A).
In State v. Maurer, (1985), 19 Ohio St.3d 108, the Supreme Court of Ohio held at p. 264 that "the admission of [evidence] is left to the sound discretion of the trial court." Appellate courts should be slow to interfere with a trial court's determination concerning the admissibility of evidence unless the court has clearly abused its discretion and the party has been materially prejudiced. State v. Prim (1999),134 Ohio App.3d 142, 155, citing State v. Maurer (1984),15 Ohio St.3d 239,265. Additionally, "A trial court enjoys broad discretion in admitting evidence. This court will not reject an exercise of discretion unless it clearly has been abused and the criminal defendant thereby has suffered material prejudice." State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804, syllabus.
In this assignment of error, the defendant initially contends that Detective Hall should not have been able to testify with regard to probable cause for the search warrants.
In the case sub judice, the evidence concerning whether or not probable cause existed to support the search warrants was probative of the issue of defendant's guilt or innocence, and was not unfairly prejudicial. Additionally, the evidence with regard to the money discovered in the safety deposit boxes was highly probative and not unfairly prejudicial. Considering the defendant's low income relative to the large amount of money discovered in the safety deposit boxes, the evidence concerning the money and how it was obtained, whether illegally through drug trafficking or otherwise, is probative. The defense is entitled to raise questions in order to create reasonable doubt in the minds of the factfinder. The jury is the judge of the credibility of witnesses and of what weight is to be given this testimony. We find no abuse of discretion.
This assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, J., CONCURS TIMOTHY E. McMONAGLE, P.J., CONCURS WITH ATTACHED CONCURRING OPINION.