DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Craig Gilbert, was found guilty after he pled no contest to illegal possession of chemicals for the manufacture of drugs (methamphetamine) following the denial of his motion to suppress certain evidence which had been seized pursuant to a warrant. Appellant now appeals the judgment of the Scioto County Court of Common Pleas overruling his motion to suppress. He argues the trial court erred in overruling his motion to suppress evidence seized pursuant to a search, because the affidavit in support of the warrant failed to provide a substantial basis for the issuing judge to conclude that probable cause existed. *Page 2 
Appellant also asserts that the search warrant was executed in violation of the knock and announce requirement. Because we find that the affidavit in support of the warrant contained sufficient information to support a finding of probable cause to issue a warrant to search the residence described, we disagree. Further, although we agree with Appellant's contention that the execution of the search warrant arguably violated both his statutory and constitutional right to have law enforcement knock and announce their presence, as well as their intent to search, prior to entering his residence, we conclude that such violations do not merit application of the exclusionary rule. Accordingly, we overrule both of Appellant's assigned errors and affirm the trial court's judgment denying Appellant's motion to suppress.
 Facts {¶ 2} On April 3, 2005, Brian Woodruff was stopped by the Ohio State Highway Patrol and was found to be in possession of products used in the production of methamphetamine. As a result, Woodruff was taken into custody and transported to the Portsmouth Patrol Post where he spoke with Trooper Brown, who was working with a joint drug task force. Woodruff informed Trooper Brown that he was "in the process of delivering the items to the residence of a friend, who he routinely acquired methamphetamine from over the course of the past few months." *Page 3 
 {¶ 3} Woodruff subsequently agreed to make a "controlled buy" for law enforcement and as such was considered a "confidential informant." That same day, Woodruff delivered the items while the Scioto County Sheriffs Department, as well as the Ohio State Highway Patrol, conducted surveillance. In exchange for the items, Woodruff was provided with a vial of methamphetamine.
 {¶ 4} Based upon these events, Trooper Brown prepared an affidavit requesting that a search warrant be issued to search the residence where the controlled buy took place, described in the affidavit as "[a] dark brown, wood sided, one and one-half story wood frame dwelling. The dwelling is located on Davis Camp Road, approximately one tenth of one mile west of SR 23 in Valley Township." The affidavit specifically provided that "there is no urgent necessity for a night time search." The search warrant also identified Craig Gilbert, Appellant herein, and Elaine Blanton as having prior criminal histories, but failed to clearly state that these two individuals resided at or owned the residence described in the affidavit.
 {¶ 5} A search warrant to search the described residence was issued by a judge and was executed approximately one hour later by a joint task force comprised of members of the Ohio State Highway Patrol, Scioto County Sheriffs Department, Trooper Brown, as well as Officer Allan Lewis, a *Page 4 
member of the FBI task force. Instead of announcing their presence and intent to search pursuant to the warrant, two officers made it appear as though they were having car trouble, parked their vehicle with the hood up and the lights flashing, knocked on the door of the residence while dressed in civilian clothing and when Appellant answered the door, asked if they could use the phone. Appellant stepped outside with a hammer in his hand, which he later testified he was holding because he was in the middle of framing up his bedroom doorway, and told the two men that he did not have a telephone. The officers then asked for a ride, to which Appellant responded no and when he attempted to re-enter the residence, the two officers grabbed his wrist, so as to secure the hammer, and took him down to the ground. It was not until Appellant was being taken to the ground that the officers announced their true identity.
 {¶ 6} Upon announcing their identity, one of the officers knocked on the door of the residence and entered by force, ordering Elaine Blanton out of the house at gunpoint, and then proceeded to search the residence. It is undisputed that at no point did either officer inform either Appellant or Elaine Blanton that they were in possession of a search warrant. The search produced the items used in the manufacture of methamphetamine, as described in the warrant. *Page 5 
 {¶ 7} As a result of these events, Appellant was indicted for illegal possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041(A), illegal manufacture of drugs, in violation of R.C.2925.04, and possession of drugs, in violation of R.C.2925.11(A)/(C)(1)(a). After his motion to suppress was denied, Appellant entered a plea of no contest to count I of the indictment, illegal possession of chemicals for the manufacture of drugs, and was sentenced to a stated prison term of two years. Appellant was granted a stay of execution of the sentence pending the outcome of this appeal.
 Assignments of Error {¶ 8} Appellant now timely appeals, assigning the following errors for our review.
 {¶ 9} "I. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED THROUGH EXECUTION OF A WARRANT ISSUED IN VIOLATION OF RIGHTS SECURED TO THE DEFENDANT UNDER THE FOURTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION. THE WARRANT WAS BASED ON AN AFFIDAVIT WHICH WHOLLY FAILED TO ESTABLISH A SUFFICIENT NEXUS BETWEEN THE SUSPECTED CRIMINAL CONDUCT AND THE PLACE TO BE SEARCHED.
 {¶ 10} II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT IN FAILING TO FIND THAT THE MANNER OF EXECUTION OF THE SEARCH WARRANT IN THIS CASE WAS UNREASONABLE UNDER THE FOURTH ANDFOURTEENTH AMENDMENTS OF THE UNITED STATES *Page 6 
CONSTITUTION AND IN CONSEQUENTLY DENYING THE DEFENDANT'S MOTION TO SUPPRESS."
 Legal Analysis {¶ 11} In his first assignment of error, Appellant contends that the search warrant was improperly issued, asserting that the warrant was based on an affidavit that failed to establish a sufficient nexus between the suspected criminal conduct and the place to be searched. As such, Appellant contends that the trial court erred in denying his motion to suppress the evidence seized as a result of the search.
 {¶ 12} Traditionally, review of a decision on a motion to suppress presents mixed questions of law and fact. State v. Hatfield (Mar. 11, 1999), Ross App. No. 98CA2426, 1999 WL 158472; citing State v.McNamara (1997), 124 Ohio App.3d 706, 707 NE.2d 539; citing UnitedStates v. Martinez (C.A. 11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court is in the best position to evaluate witness credibility. State v. Dunlap, 73 Ohio St.3d 308, 314,1995-Ohio-243, 652 NE.2d 988. Accordingly, we must uphold the trial court's findings of fact if the record supports them by competent, credible evidence. Id. We then conduct a de novo review of the trial court's application of the law to the facts. State v. Anderson (1995),100 Ohio App.3d 688, 691 NE.2d 1034. *Page 7 
 {¶ 13} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide for "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." Both constitutional provisions further provide that "no warrants shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized." Id. A neutral and detached magistrate may issue a search warrant only upon the finding of probable cause. United States v. Leon (1984), 468 U.S. 897, 914-915,104 S.Ct. 3405; CrimR. 41(C). In deciding whether to issue a search warrant, the issuing magistrate must scrutinize the affidavit in support of the warrant. Then the magistrate must make a practical, common sense decision, given all the circumstances set forth in the affidavit including the veracity and basis of knowledge of persons supplying hearsay information, whether "`there is a fair probability that contraband or evidence of a crime will be found in a particular place.' "State v. George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus, quoting Illinois v. Gates (1983), 462 U.S. 213,238-39, 103 S.Ct. 2317. The appropriate test is essentially a totality of the circumstances test.
 {¶ 14} Probable cause is a lesser standard of proof than that required for a conviction, such as proof beyond a reasonable doubt or by a *Page 8 
preponderance of the evidence. State v. Young (2001),146 Ohio App.3d 245, 254, 2001-Ohio-4284, 765 N.E.2d 938, citing George at 329; Gates at 235. Probable cause only requires the existence of circumstances that warrant suspicion. Id. Thus, the standard for probable cause requires only a showing that a probability of criminal activity exists — not a prima facie showing of criminal activity. George at 329. In deciding whether an affidavit submitted in support of a search warrant sufficiently supports a finding of probable cause, a reviewing court must give great deference to the issuing magistrate's determination.George at paragraph two of the syllabus; See, also, Gates at 237. "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded warrants." United States v.Ventresca (1965), 380 U.S. 102, 108, 109, 85 S.Ct. 741, 745;Gates at 237, fn. 10; George at paragraph two of the syllabus. A reviewing court simply decides whether the affiant presented enough facts to allow the issuing magistrate or judge to independently determine the existence of probable cause. Gates, supra, at 239.
 {¶ 15} Thus, both this court and the common pleas court must apply the same standard of review to a municipal judge's determination of *Page 9 
probable cause, i.e., whether the affidavit provided a substantial basis for the municipal judge to conclude there was a fair probability that evidence of a crime would be found in the place to be searched.Gates, supra, at 238; George, supra, at 325; See, also, State v.Brown (1995), 101 Ohio App.3d 227, 230, 655 N.E.2d 269. Since we are bound by Gates and George, neither this court nor the trial court may substitute its judgment for that of the issuing court; instead, we must accord great deference to the municipal court's probable cause determination, and consider only whether it had a substantial basis for concluding that probable cause existed.[1]
 {¶ 16} Here, the foundation of Trooper Brown's affidavit was the information provided by the confidential informant, coupled with law enforcement's surveillance of the controlled buy at the residence of Appellant, which he described in his affidavit as follows:
 "On April 3, 2005, troopers from the Ohio State Highway Patrol conducted a traffic stop, which resulted in the discovery of products known by law enforcement to be used for the production of methamphetamine. The suspect from this traffic stop indicated that he was in the process of delivering the items to the residence of a friend, who he routinely acquired methamphetamine from over the course of the past two months. This suspect agreed to make a controlled buy for law enforcement and is now considered a confidential enforcement (sic) (CI).
 The CI indicated that he has bought methamphetamine 20 times over the past two months. *Page 10 
 While officers of the Scioto County Sheriffs Department and the Ohio State Highway Patrol conducted surveillance, the CI delivered said items in exchange for a vial of methamphetamine. The vial of methamphetamine field tested positive as methamphetamine."
 {¶ 17} Appellant argues that the affidavit failed to establish a sufficient nexus between the suspected criminal conduct and the place to be searched. Specifically, Appellant argues that the affidavit does not state the location of the exchange, nor does it identify the persons involved in the exchange. Appellant further argues that Trooper Brown failed to state facts connecting the residence described in the affidavit with the exchange, or with himself, which resulted in the issuing judge having to stack inference upon inference to create a nexus. We reject Appellant's argument.
 {¶ 18} In reviewing the affidavit, we find, after affording the appropriate deference to the determination of the issuing judge, that there was a substantial basis for concluding probable cause existed. We agree with Appellant that the affidavit should have been more factually specific. Particularly in establishing that the residence in which Woodruff was initially attempting to deliver the illegal items was, in fact, the residence of Appellant and further that the location of the controlled buy took place at that same residence. However, the affiant adequately described the residence in the command portion of the warrant and we conclude that the *Page 11 
references to the residence on the second page of the affidavit reasonably relate back to the initial description of the residence.
 {¶ 19} Further, although the affidavit simply states that "the CI delivered said items in exchange for a vial of methamphetamine," without specifically stating the location to which the items were delivered, we conclude that it was not unreasonable for the issuing judge to infer that the delivery was to the residence described in the preceding paragraph of the affidavit and also described in the command portion of the warrant.[2] This court has previously recognized, in the context of issuing search warrants, that "reasonable, common-sense inferences are permitted when drawn from facts actually alleged in the affidavit."State v. Spencer (Nov. 4, 1998), Scioto App. No. 97CA2536,1998 WL 799249; citing State v. Bean (1983), 13 Ohio App.3d 69, 72,468 NE.2d 146.
 {¶ 20} In light of our conclusion that the municipal judge had a substantial basis for concluding probable cause existed to issue a warrant to search Appellant's residence, we overrule Appellant's first assignment of error and affirm the trial court's affirmance of the municipal judge's issuance of the search warrant. Further, we conclude that the trial court did not err in *Page 12 
denying Appellant's motion to suppress based on his argument that the search warrant was improperly issued.
 II. {¶ 21} In his second assignment of error, Appellant contends that the trial court erred in failing to find that the search warrant of his residence was executed unreasonably and in violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution. Additionally, Appellant asserts that the trial court further erred in denying his motion to suppress. We again note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. Dunlap, supra. Accordingly, we must uphold the trial court's findings of fact if the record supports them by competent, credible evidence. Id. We then conduct a de novo review of the trial court's application of the law to the facts.Anderson, supra.
 {¶ 22} R.C. 2935.12 sets forth Ohio's knock and announce procedures and provides as follows:
 "(A) When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to *Page 13 
execute the warrant or summons, he is refused admittance, but the law enforcement officer or other authorized individual executing a search warrant shall not enter a house or building not described in the warrant."
 {¶ 23} This statute essentially prohibits law enforcement officers from forcibly entering the premises to be searched unless certain requirements are met, and in the context of the facts sub judice, the statute required that law enforcement announce their presence, as well as their intent to search, and be refused admittance, either actually or constructively, prior to forcibly entering Appellant's residence. Shouting, "sheriff, search warrant" generally constitutes sufficient notice of intention to search. See State v. Amundson (1996),108 Ohio App.3d 438, 670 N.E.2d 1083.
 {¶ 24} However, the knock and announce requirement has certain recognized exceptions that include the existence of exigent circumstances, which may include an officer's fear for his physical safety or an officer's reasonable belief that "evidence would likely be destroyed if advance notice were given." Wilson, supra, at 936. Ohio's knock and announce statute provides for judicial waiver of the knock and announce requirement if officer safety is a concern, or if such an exigency arises at the time of execution of the warrant, the officers may dispense with the knock and announce procedures. R.C. 293512; R.C.2933.231; Wilson, supra, at 934. Of importance is the fact that although narcotics investigations often involve *Page 14 
the potential for violence and the potential that the suspect will attempt to destroy evidence, the United States Supreme Court has rejected a blanket rule that would permit law enforcement officers to forcibly enter the premises subject to the search warrant any time narcotics were involved. Richards v. Wisconsin (1997), 520 U.S. 385,117 S.Ct. 1416.
 {¶ 25} Specifically, the Richards Court stated that to recognize every felony drug investigation as creating exigent circumstances would be an "overgeneralization," thus retaining a case-by-case analysis approach. Id. at 393. The Richards Court formulated a case by case analysis standard, which provides that "[i]n order to justify a `no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Id. at 394. Many cases provide that the presence of a weapon alone generally is insufficient to justify an officer's fear for his safety. Instead, the officer must relate facts establishing that "the suspect was armed and likely to use a weapon or become violent." State v. Russell (June 30, 1998), Athens App. No. 97CA37, 1998 WL 357546; citing United States v.Bates (C.A. 1996), 84 F.3d 790, 795; see, also, United States v.Nabors (C.A. 6, 1990), 901 F.2d 1351, 1354, cert. denied (1990), *Page 15 
498 U.S. 871, 111 S.Ct. 192; United States v. Spinelli (C.A. 2, 1988),848 F.2d 26, 30. Further, this Court has rejected the adoption of a "blanket rule that invokes the destruction of evidence exception whenever the objects named in the search warrant are by their nature amenable to ready disposal or destruction[.]" State v. Valentine (1991),74 Ohio App.3d 110, 598 N.E.2d 82.
 {¶ 26} In addition to the Ohio statutory requirements, theFourth Amendment to the United States Constitution requires law enforcement officers to execute search warrants in a reasonable manner. See U.S. Const. Am. IV (protecting "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."). In determining whether law enforcement officers executed a search warrant in a reasonable manner, one aspect that courts must consider is the procedure in which the search warrant was executed. InWilson, supra, the United States Supreme Court held that whether law enforcement officers properly complied with the knock and announce procedures forms part of the reasonableness inquiry under theFourth Amendment.
 {¶ 27} In the case at bar, we note that while the State seems to concede that the officers did not comply with the statutory and constitutional knock and announce, it seems to argue that exigent circumstances arose which *Page 16 
exempted the officers from the knock and announce requirements. Appellant argues that the two officers who made the initial approach to his residence had no intention of complying with the statutory and constitutional requirement that they knock and announce their presence as well as their intent to search. Appellant further argues that "[n]o exigencies existed at the moment of entry which remove the requirement of a knock and announce procedure." We agree with Appellant.
 {¶ 28} Based upon our review of the testimony presented at the motion to suppress hearing, it appears that the two officers did not intend to disclose their true identity, as well as their intent to search, upon execution of the search warrant. Rather, Trooper Brown testified that he and the other officer approached the residence in civilian clothing and "we were telling them we just wanted to use the telephone and we wanted them to come outside." Trooper Brown further testified that they wanted the Appellant out of the house "because we didn't know for sure what would be in there. We were concerned with the safety."
 {¶ 29} We conclude that such testimony is at odds with the events leading up to the request and issuance of the warrant, as well as the circumstances that actually existed at the time the warrant was executed. First, the record reveals that Trooper Brown did not request judicial waiver *Page 17 
of the knock and announce procedures at time the warrant was issued. Further, the warrant specifically stated that "[a]ffiant states that there is no urgent necessity for a night time search." Thus, and in light of the United States Supreme Court's rejection of a blanket exception to the knock and announce requirements in the context of narcotics searches, we find that if law enforcement truly anticipated officer safety issues, a judicial waiver should have been requested.
 {¶ 30} Secondly, as previously set forth, the only other way to avoid the knock and announce procedures would be if exigent circumstances arise at the time of the execution of the warrant. Based on our review of the record, it appears that Trooper Brown testified that when Appellant came to the door, "he had a hammer in his hand and he was holding it down at his side, didn't appear as if he was going to use it, but I was concerned that he might, so I grabbed ahold of his wrist, the one that was holding the hammer and pulled him out of the house." In light of Trooper Brown's testimony that it didn't appear Appellant was going to use the hammer as a weapon, coupled with the fact that Appellant's only criminal history disclosed in the affidavit in support of the warrant was related to the passing of bad checks, which is a nonviolent crime, we find the State's argument that exigent circumstances existed to be without merit. *Page 18 
 {¶ 31} Thus, because we find that exigent circumstances did not exist so as to remove the statutory and constitutional requirement that the officers knock and announce their presence and intent to search, and light of the fact that the State does not dispute that the officers did not, at any point even after announcing their true identity, announce they were in possession of a search warrant[3], we conclude that Appellant's statutory and constitutional rights have been unreasonably violated by the manner in which the search warrant was executed. As such, Appellant's second assignment of error is well taken, in part.
 {¶ 32} Our inquiry, however, does not end here. Appellant further argues that because the officers failed to comply with the recognized knock and announce procedures, the trial court should have granted his motion to suppress the evidence seized as a result of the search. Although we agree with Appellant's argument that the manner in which the search warrant of his residence was executed resulted in a violation of his statutory and constitutional rights, we nevertheless must consider whether such violation rises to such a level that requires application of the exclusionary rule.
 {¶ 33} While it has been held that, at trial, a court must exclude all evidence obtained in violation of a defendant's Fourth Amendment rights, it *Page 19 
has most recently been noted that "`[w]hether the exclusionary sanction is appropriately imposed in a particular case, — is "an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." ` "Mapp v.Ohio (1961), 367 U.S. 643, 655, 81 S.Ct. 1684; Hudson v. Michigan
(2006), 126 S.Ct. 2159; citing United States v. Leon (1984),468 U.S. 897, 907, 104 S.Ct. 3405, quoting Illinois v. Gates (1983),462 U.S. 213, 223, 103 S.Ct. 2317.
 {¶ 34} Although the United States Supreme Court held in Wilson v.Arkansas that the "common-law `knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment," the respondent and its amici in that case also asked the Court to affirm the lower court's denial of the motion to suppress on the ground that "exclusion is not a constitutionally compelled remedy where the unreasonableness of a search stems from the failure of announcement."Wilson, supra, at 1919, fn. 4. In support of their request, respondent and amici argued that "any evidence seized after an unreasonable, unannounced entry is causally disconnected from the constitutional violation and that exclusion goes beyond the goal of precluding any benefit to the government flowing from the constitutional violation." Id. However, the Court declined to address the argument *Page 20 
"[b]ecause this remedial issue was not addressed by the court below and is not within the narrow question on which we granted certiori." Id.
 {¶ 35} Subsequently, the United States Supreme Court was squarely faced with the precise issue of "whether the exclusionary rule is appropriate for violation of the knock-and-announce requirement" inHudson v. Michigan at 2163. In response to this question, the Court concluded that violation of the knock and announce rule does not require suppression of evidence found in a search and held that, in the event of a knock and announce violation, "[r]esort to the massive remedy of suppressing evidence of guilt is unjustified." Id. at 2168.
 {¶ 36} In reaching this result, the Hudson Court noted that "[suppression of evidence * * * has always been our last resort, not our first impulse." Hudson at 2163. In considering whether evidence seized after a violation of the knock and announce rule occurred, the Court reasoned that "[w]hether the preliminary misstep had occurred or not, the police would have executed the warrant they had obtained, and would have discovered the gun and drugs inside the house." Id. at 2164; citingSegura v. United States (1984), 468 U.S. 796, 815, 104 S.Ct. 3380.
 {¶ 37} The Hudson Court also explained the interests served by the knock and announce rule, which primarily include "protection of life and *Page 21 
limb, because an unannounced entry may provoke violence in supposed self-defense by the surprised resident," and "protection of property," in that breaking into a house unnecessarily may cause damage to property when one presumes that if the occupant had notice of law enforcement's intent to enter he or she would obey. Another interest served by the rule "protects those elements of privacy and dignity that can be destroyed by a sudden entrance," such as assuring "the opportunity to collect oneself before answering the door." Id. at 2165. The reasoning of the Hudson court has recently been addressed by the Supreme Court of Ohio in State v. Oliver, 112 Ohio.St.3d 447, 2007-Ohio-372. InOliver, the Court noted that Hudson was "the most recent pronouncement on the exclusionary rule by the United States Supreme Court[,] and that "we have a duty to see that Hudson is addressed as expeditiously as possible."
 {¶ 38} Considering the interests served by the knock and announce rule, which "do not include the shielding of potential evidence from the government's eyes," it cannot be said that the remedial objectives of applying the exclusionary rule would be served by suppressing the evidence seized in connection with the search of Appellant's home.Hudson at 2163, 2165. This is because there is a causal disconnect between the interests served by the knock and announce rule and the remedial objectives achieved *Page 22 
by application of the exclusionary rule. It has been noted that "[a]ttenuation[4] can occur, of course, when the causal connection is remote." Hudson at 2164; citing Nardone v. United States (1939),308 U.S. 338, 341, 60 S.Ct. 266. "Attenuation also occurs when, even given a direct causal connection, the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." Hudson at 2164.
 {¶ 39} Thus, we conclude that despite our finding that the officers failed to comply with the knock and announce rule, such a violation does not warrant application of the exclusionary rule. Therefore, the trial court's denial of Appellant's motion to suppress the evidence seized in connection with the search of his residence was not in error. Accordingly, we find Appellant's second assignment to be wholly without merit and we affirm the trial court's denial of Appellant's motion to suppress.
 JUDGMENT AFFIRMED. *Page 23 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment and Opinion as to Assignment of Error I and Concurs in Judgment Only as to Assignment of Error II.
Abele, J.: Concurs in Judgment Only.
[1] We note that this standard of review is more deferential than the review we engage in in other contexts involving a motion to suppress. See, e.g. State v. Klein (1991), 73 Ohio App.3d 486, 488,597 N.E.2d 1141.
[2] Crim.R. 41(C) permits the municipal judge to question the affiant-officer personally and under oath in order to be objectively satisfied of the credibility and factual basis of any information contained in his written sworn statement. Nothing in this record suggests the municipal court judge did so. Rather, it appears this municipal judge issued the warrant on the affidavit alone. In light of the deficiencies in the affidavit, such an inquiry would have been helpful for our review.
[3] "An officer must make clear his intentions. It is not sufficient for the officer to merely identify himself as a police officer." Ohio Arrest, Search and Seizure, 2005 Ed., § 7:11; citing State v. Early
(1977), 7 Ohio Op.3d 227; State v. Valentine, supra.
[4] The attenuation doctrine is defined as "[t]he rule proving that evidence obtained by illegal means may nonetheless be admissible if the connection between the evidence and the illegal means is sufficiently attenuated or remote," and is considered to be "an exception to the fruit of the poisonous tree doctrine." Black's Law Dictionary (8th ed. 2004). *Page 1