[Cite as *State v. Eldridge*, 2012-Ohio-3747.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 11CA3441 |
| | : | |
| vs. | : | **Released: August 10, 2012** |
| | : | |
| PETER D. ELDRIDGE, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

APPEARANCES:

Richard W. Campbell, Portsmouth, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecutor, and Pat Apel, Assistant Scioto County Prosecutor, Portsmouth, Ohio, for Appellee.

McFarland, J.:

{¶1} Appellant Peter Eldridge pled no contest to three counts of aggravated trafficking in drugs with two of the counts alleging he committed the trafficking within the vicinity of a juvenile.[1] Eldridge stipulated there was sufficient evidence of guilt and the Scioto County Court of Common Pleas found him guilty of all three counts. Eldridge now appeals the trial court's denial of his motion to suppress, arguing 1) the affidavit submitted in support of the request for a search warrant was inadequate and failed to establish probable cause; and 2) law

---

[1] The trial court and state erroneously denominated these counts as "trafficking in drugs."

enforcement officers' execution of the search warrant was unreasonable because they violated the knock and announce rule contained within R.C. 2935.12(A). Having reviewed the record, we find the affidavit was sufficient to establish probable cause and the officers did not violate R.C. 2935.12(A). Accordingly, we overrule Eldridge's two assignments of error and affirm the trial court's judgment entry denying his motion to suppress.

FACTS

{¶2} As early as 1995, anonymous callers began informing law enforcement that Eldridge was selling drugs from his residence. In 2010, Detective John Koch of the Scioto County Sheriff's Office conducted a controlled buy from Eldridge using a confidential informant. Det. Koch gave the informant an audio recording device and money, which Det. Koch had previously photocopied, and observed the informant enter Eldridge's residence. After the transaction was complete, Det. Koch met the informant at a prearranged location and debriefed him. Det. Koch recovered a pill containing oxycodone, which the informant stated he obtained from Eldridge. Det. Koch and the informant conducted three more controlled buys from Eldridge, each yielding oxycodone, though one of the times the informant bought the pill from Eldridge's son.

{¶3} Det. Koch then presented an affidavit containing the anonymous call history surrounding Eldridge and his residence and details of the four controlled

buys to a judge at the Scioto County Municipal Court. The judge issued a search warrant for Eldridge's residence.

{¶4} Det. Koch and other law enforcement officers then travelled to Eldridge's residence. Eldridge's residence was set back from the road and there were security cameras. Det. Koch and his team exited the van in a stack formation with Det. Koch at the front wielding a battering ram and all members wearing tactical vests emblazoned with "Sheriff's Office" or "Police Department." Immediately upon approaching the door to the residence, which was comprised almost entirely of transparent glass, Det. Koch saw Eldridge's son. The son began shouting to someone inside the residence and Det. Koch and his team announced their presence by repeatedly shouting, "Sheriff's office, search warrant!" Det. Koch also made eye contact with Eldridge's son during this time, as the team was only three to four feet from the door.

{¶5} Det. Koch tried to open the door, but it would not open. Even though Eldridge's son saw the law enforcement officers approach the door and heard their announcement, he made no effort to admit them into the residence or to permit Det. Koch to be able to open the door. Det. Koch told the son to move back as he prepared to breach the door with the battering ram. While Det. Koch intended to hit the door frame with the ram, he missed, sending the ram through the glass portion of the door and lacerating his arm in the process.

{¶6} Law enforcement entered the residence, secured the persons therein, and executed the search. They recovered large quantities of controlled substances, including oxycodone, and over $11,000 in cash.

{¶7} The grand jury returned an indictment against Eldridge for 15 separate counts and a forfeiture specification. Eldridge filed a motion to suppress, arguing the affidavit submitted in support of the search warrant was deficient and the evidence should also be suppressed because law enforcement failed to knock before breaking his door and entering the residence. The trial court denied Eldridge's motion in its entirety.

{¶8} Consequently, Eldridge pled no contest to Counts 1 (aggravated trafficking in drugs, with an additional aggravating factor of being in the vicinity of a juvenile), 3 (aggravated trafficking in drugs, with an additional aggravating factor of being in the vicinity of a juvenile), and 5 (aggravated trafficking in drugs) and agreed to the forfeiture specification. The trial court found him guilty of all three counts and sentenced him accordingly. Eldridge now appeals the trial court's denial of his motion to suppress.

## ASSIGNMENTS OF ERROR

I. "THE TRIAL COURT ERRED IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED THROUGH EXECUTION OF A WARRANT ISSUED IN VIOLATION

OF RIGHTS SECURED TO THE DEFENDANT UNDER THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.  THE WARRANT WAS BASED ON AN AFFIDAVIT WHICH FAILED TO ESTABLISH A SUFFICIENT NEXUS BETWEEN THE SUSPECTED CRIMINAL CONDUCT AND THE PLACE TO BE SEARCHED."

II. "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT IN FAILING TO FIND THAT THE MANNER OF EXECUTION OF THE SEARCH WARRANT IN THIS CASE WAS UNREASONABLE UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.  AND IN CONSEQUENTLY DENYING THE DEFENDANT'S MOTION TO SUPPRESS."

STANDARD OF REVIEW

{¶9} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall

issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article I, Section 14 of the Ohio Constitution contains a nearly identical provision.

{¶10} Generally, "'[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.'" *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 100, quoting *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). "Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Westbrook,* 4th Dist. No. 09CA3244, 2010-Ohio-2692 ¶16, citing *State v. Landrum*, 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist. 2000). "Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case." *Westbrook* at ¶ 16, citing *Roberts* at ¶ 100, citing *Burnside* at ¶ 8.

I.

{¶11} In his first assignment of error, Eldridge argues the trial court erred by not suppressing the evidence because the affidavit Det. Koch submitted to obtain the search warrant was insufficient to establish probable cause. We disagree.

## A. Legal Analysis

**{¶12}** "'A neutral and detached magistrate may issue a search warrant only upon the finding of probable cause.'" *State v. Westbrook*, 4th Dist. No. 09CA3277, 2010-Ohio-2692, at ¶ 18, quoting *State v. Gilbert,* 4th Dist. No. 06CA3055, 2007-Ohio-2717, at ¶ 13, citing *United States v. Leon*, 468 U.S. 897, 914-915, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and Crim.R. 41(C). A warrant shall issue "only on an affidavit or affidavits sworn to before a judge of a court of record * * * establishing the grounds for issuing the warrant." Crim.R. 41(C).[2]

**{¶13}** When considering the issuance of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Considering the totality of the circumstances, "so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates* at 236, quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697(1960). Accordingly, "the duty of a reviewing court is simply to ensure that

---

[2] We apply the prior version of Crim.R. 41 that was in effect when the magistrate issued the search warrant.

the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates*, at 238-239, quoting *Jones* at 271. "Neither the trial court nor an appellate court should substitute its judgment for that of the magistrate." *Westbrook* at ¶ 20, citing *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), at paragraph two of the syllabus (following *Gates*). "The reviewing court 'should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.'" *Id.* "[T]his standard of review is more deferential than the review we engage in other contexts involving a motion to suppress." *State v. Goddard*, 4th Dist. No. 97CA23, 1998 WL 716662 (Oct. 2, 1998), at fn.2, citing *State v. Klein*, 73 Ohio App.3d 486, 488, 597 N.E.2d 1141 (4th Dist. 1991).

{¶14} "To make a valid finding of probable cause, a magistrate must be informed of: (1) the basis of the informant's knowledge; and (2) sufficient facts to establish either the informant's veracity or the reliability of the informant's information. *State v. Walker*, 4th Dist. No. 08CA3030, 2009-Ohio-1903, at ¶36, citing *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). *See*, *also*, Crim.R. 41(C). "'However, an affidavit lacking in these areas is not automatically insufficient to procure the issuance of a search warrant.'" *Westbrook* at ¶ 24, quoting *Goddard*. "These areas should instead be viewed as 'closely intertwined issues that may usefully illuminate the commonsense, practical

question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.'" *Id*. "Therefore, a deficiency in one area may be overcome by 'other indicia of reliability.'" *Id*.

{¶15} One such indicium of reliability is corroboration of the informant's story. "Corroboration lends credence to the remaining unverified portion of the informant's story by demonstrating that the informant has, to the extent tested, spoken truthfully." *Goddard*, citing LaFave, Search and Seizure (1996) 157, Section 3.3(e). "Furthermore, *Gates* explicitly reject[ed] the position that corroboration of innocent activity is not sufficient, noting that seemingly innocent activity can become suspicious in light of a prior tip." *Id*.

{¶16} Here, Det. Koch provided the trial court with testimony of several controlled buys where Eldridge sold oxycodone to an informant. On each occasion, between 9:00 a.m. and 9:00 p.m. Det. Koch gave the informant money he had previously photocopied and observed the informant enter Eldridge's residence. The informant had an audio recording device on him while the transactions took place.[3] The informant later met Det. Koch at a predetermined location and gave Det. Koch a pill that contained oxycodone. The informant stated he had purchased the pill from "Pete D. Eldridge." Det. Koch and the informant conducted four controlled buys within four months, with one of the purchases coming from

---

[3] We note that because Det. Koch took the time to equip his informant with an audio recording device during the controlled buys, it would have bolstered his affidavit if he had revealed the contents of the recordings and they had corroborated the informant's version of events.

Eldridge's son. The last controlled buy occurred the day before the judge issued the search warrant. The informant later viewed photographs Det. Koch provided to him and identified Eldridge and his son as the persons who sold him the oxycodone.

{¶17} Moreover, the affidavit contained numerous anonymous calls made to law enforcement, alleging Eldridge or persons at his residence were selling drugs. "An anonymous tip cannot support probable cause * * * without corroboration. *Alabama v. White* (1990), 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301. However, the corroboration must demonstrate the assertion of illegality and not just the identity of the person." *State v. Hunter*, 2d Dist. No. 24350, 2011-Ohio-6321, at ¶ 20, citing *Florida v. J.L.*, 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

{¶18} In this case, the four controlled buys corroborated the anonymous tips. The tips alleged Eldridge was selling drugs from his residence and the informant corroborated Eldridge was in fact trafficking in controlled substances when he bought oxycodone from Eldridge on three occasions.

{¶19} We readily acknowledge the controlled buys were not textbook and there was no real-time surveillance of the transaction. Nor was the informant searched before or after the buys to insure the oxycodone came from Eldridge. See, *State v. Stephens*, 8th Dist. No. 94520, 2010-Ohio-6165, at ¶ 4; *State v.*

*McIntire*, 6th Dist. No. H-10-004, 2011-Ohio-1544, at ¶ 40; *State v. Thompson*, 7th

Dist. No. 08 CO 41, 2010-Ohio-3278, at ¶ 4; *State v. Holdren*, 4th Dist. No.

09CA14, 2010-Ohio-334, at ¶ 4.

{¶20} Yet considering the totality of the circumstances and the deference

afforded to the judicial official who issued the search warrant, we find the affidavit

provided a substantial basis for the judge to determine there was a fair probability

that contraband or evidence of a crime would be found at the residence.  While the

informant was not searched before the controlled buys and there is the possibility

he obtained the drugs from someone other than Eldridge and his son, Det. Koch

did not have to establish Eldridge was guilty beyond a reasonable doubt or even

establish a prima facie case when he applied for a search warrant.  Det. Koch

needed only establish there was a fair probability he would find contraband or

evidence of a crime if the court permitted him to search Eldridge's residence and

person, and the affidavit did just that.  "[T]he standard for probable cause requires

*only* a showing that a probability of criminal activity exists, *not* a prima facie

showing of criminal activity."  *State v. Young*, 146 Ohio App.3d 245, 765 N.E.2d

938 (11th Dist. 2001), citing *George*, 45 Ohio St.3d at 329, 544 N.E.2d 640 and

*State v. Taylor*, 82 Ohio App.3d 434, 440, 612 N.E.2d 728 (2d Dist. 1992).

{¶21} Alternatively, had we determined probable cause to issue the search

warrant did not exist, we find law enforcement acted in good faith in executing the

search warrant.  Pursuant to the exclusionary rule, "all evidence obtained by searches and seizures in violation of the [United States] Constitution is, by that same authority, inadmissible in a state court." *State v. Wilmoth*, 22 Ohio St.3d 251, 255, 490 N.E.2d 1236 (1986), quoting *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).  "[T]he objective of the exclusionary rule [is] to deter willful, or at the very least negligent, police conduct which deprive[s] a defendant of some right." *Wilmoth* at 265.  However, "the rule [is] useless when the police act in good faith." *Id.*, referencing *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).  "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.  '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.'  Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." (Citation omitted.) *Leon* at 921.

{¶22} Under the good faith exception to the exclusionary rule, a court may not suppress evidence obtained by officers "acting in objectively reasonable, good faith reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid." *Wilmoth* at paragraph one of the syllabus, citing *Leon* at 923.  However, suppression remains appropriate where the officer relied

on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (Citations omitted.) *George*, 45 Ohio St.3d at 331, 544 N.E.2d 640, quoting *Leon* at 923. *See*, *also*, *State v. Johnson*, 4th Dist. No. 08CA6, 2008-Ohio-5907, at ¶ 18-19.

{¶23} In this case, the affidavit was not so devoid of indicia of probable cause so as to render Det. Koch's reliance upon it unreasonable. An affidavit that contains conclusory statements and nothing more specific is merely "bare bones" and insufficient to support to a magistrate's finding of probable cause. *See Gates*, 462 U.S. at 239, 103 S.Ct. 2317. The affidavit here was not merely conclusory and it was not "bare bones," nor was it so deficient as to render official belief in probable cause unreasonable. The affidavit contained numerous tips that Eldridge was trafficking in controlled substances, which Det. Koch corroborated when he conducted the controlled buys and Eldridge sold oxycodone to the informant.

{¶24} Accordingly, because Det. Koch and his brethren relied upon the search warrant in good faith, the good faith exception would apply. Thus, we overrule Eldridge's first assignment of error.

## II.

{¶25} In his second assignment of error, Eldridge argues law enforcement not only unreasonably executed the search warrant on his residence in violation of the "knock and announce" rule, but he also argues the evidence obtained should be

excluded because of this violation of his rights. Specifically, Eldridge relies upon R.C. 2935.12(A) and maintains this statute affords more protection than the common law "knock and announce" rule and its noted exceptions. *See Hudson v. Michigan*, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). However, because we find law enforcement officers did not violate R.C. 2935.12(A), and even if they had, exclusion of the recovered evidence is not the proper remedy, we disagree.

## A. Legal Analysis

{¶26} "[W]hether law enforcement officers properly complied with the knock and announce procedures forms part of the reasonableness inquiry under the Fourth Amendment." *State v. Gilbert*, 4th Dist. No. 06CA3055, 2007-Ohio-2717, at ¶ 26, citing *Wilson v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995).

R.C. 2935.12(A) provides:

[W]hen executing a search warrant, the * * * authorized individual * * * executing the warrant * * * may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to * * * execute the warrant or summons, he is refused admittance * * *.

{¶27} Preliminarily, we note the "knock and announce rule," as codified in R.C. 2935.12(A) does not actually require law enforcement to knock, or rap on the door before entering. Rather, the rule, both common law and statutory, merely requires law enforcement announce its presence and intent, giving the occupant a chance to comply and admit law enforcement officers before condoning the breaking of doors or windows. *See*, *Gilbert* at ¶23, citing *State v. Amundson*, 108 Ohio App.3d 438, 670 N.E.2d 1083 (12th Dist. 1996); *Wilson* at 931-934. Thus, the fact that Det. Koch did not actually knock on the door is not dispositive.

{¶28} Here, law enforcement complied with R.C. 2935.12(A) and the precondition for nonconsensual, forcible entry because the officers announced their intent to execute the search warrant and were refused admittance. As the lower court found, law enforcement officers made eye contact with Eldridge's son through the door. The son not only saw the officers, but he was also able to hear them as they announced their presence and intent to execute the search warrant when they shouted, "Sheriff's office, search warrant!"

{¶29} After law enforcement officers announced their intent to execute the search warrant, Eldridge's son did not admit them into the residence. Officers were unable to open the glass door and the son did not open it for them, despite having seen and heard them. The lower court found this to be a refusal of admittance and we must agree.

**{¶30}** Once the officers gave notice of their intent to execute the search warrant and the son refused admittance, this satisfied the precondition for nonconsensual, forcible entry and the officers had the right to breach the door with the battering ram. Accordingly, we find the officers did not violate R.C. 2953.12(A) and their execution of the search warrant was reasonable.

**{¶31}** Even if we were to find the execution of the search warrant was unreasonable, we do not believe suppression of the evidence would be the appropriate remedy. The knock and announce rule serves the interests of protecting life and limb "because an unannounced entry may provoke violence in supposed self-defense by the surprised resident"; and protection of property because it "gives individuals 'the opportunity to comply with the law and to avoid the destruction of property occasioned by a forcible entry.'" (Citation omitted.) *Hudson*, 547 U.S. at 594, 126 S.Ct. 2159. The rule also "protects those elements of privacy and dignity that can be destroyed by a sudden entrance." *Id*.

**{¶32}** "What the knock-and-announce rule has never protected, however, is one's interest in preventing the government from seeing or taking evidence described in a warrant. Since the interests that *were* violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable." (Emphasis in original). *Id*. *See*, *also*, *Gilbert*, 2007-Ohio-2717, at ¶ 32-29.

{¶33} Therefore, we find the trial court did not err in refusing to suppress the evidence based upon law enforcement's alleged violation of the knock and announce rule. We overrule Eldridge's second assignment of error and affirm the lower court's judgment.

**JUDGMENT AFFIRMED**.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J. and Kline, J: Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**