DECISION AND JUDGMENT ENTRY
{¶ 1} Antonio L. Walker appeals the Ross County Common Pleas Court's denial of his motion to suppress. On appeal, Walker contends that the trial court erred when it determined that the search warrant authorized a search of his person away from his residence. Because a person may be searched any place where he is found unless the warrant specifies that the search be conducted at a specific location, we disagree. Walker next contends that the magistrate lacked probable cause to issue the warrant to search him. Because, under the totality of the circumstances, a reasonable person would be justified in concluding that there was a fair probability that contraband or *Page 2 
evidence of a crime would be found on Walker's person, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} Detective Larry Large of the Chillicothe Sheriff's Office applied for three search warrants from the Chillicothe Municipal Court. He provided affidavits in support. He indicated the following facts in his affidavit for the second search warrant.
 {¶ 3} In the months leading up to April 2007, the Ross County Sheriff's Office received a number of tips related to the illegal trafficking of crack cocaine in the Chillicothe area. Specifically, detectives received complaints that Walker and Christian Brown were selling crack cocaine.
 {¶ 4} To investigate these tips, the officers conducted three controlled purchases. The first two transactions were at 152 Park Street, Chillicothe, Ohio, and involved two different informants. However, each informant was just involved in one transaction. Before both of the separate purchases, the detectives searched the informants to confirm neither of them had any contraband or money. The detectives recorded the serial numbers of an unknown number of bills and then gave this money to the two informants. The detectives observed the informants and confirmed that the informants in fact entered 152 Park Street. After the purchases, the informants met the detectives at a predetermined location, and both informants gave the detectives off-white rocks, which field tested positive for cocaine. The detectives again searched each informant to ensure that they turned over all contraband and money. *Page 3 
 {¶ 5} One of the informants told the detectives of Walker's presence at the transaction, and also told them that Walker had four ounces of crack cocaine on his person.
 {¶ 6} A third controlled purchase took place at 166 Park Street, Chillicothe, Ohio. The detectives and the informant conducted this purchase in a similar manner. Again, the informant indicated Walker's presence, but the informant also indicated that Desiree Esters conducted the actual purchase. The informant also stated that Walker had advised him that Walker had more crack cocaine in his vehicle.
 {¶ 7} Based on the information in this affidavit, the municipal judge issued the search warrant for the two parcels of property involved in the transactions; the people involved in the transactions, Walker, Brown, and Esters; and any vehicles at the property.
 {¶ 8} Immediately after the judge approved the search warrant, Detective Large and Detective T. Goble of the Sheriff's Office conducted surveillance at the properties in question. The detectives observed Esters depart the area in a 1998 Lexus, which was parked in front of the 166 Park Street address. Law enforcement dispatched a marked car and stopped the Lexus. The officers found two fifty dollar bills in her purse, and these bills were bills the police had given the confidential informants to purchase cocaine or crack in one of the transactions described earlier in the affidavit. When confronted with this information, Esters told the officers that Walker, her boyfriend, was supposed to meet her at a movie theatre.
 {¶ 9} With her assistance, the officers located Walker. After he left the movie theatre parking lot, an officer in a marked car stopped and arrested him. Walker denied *Page 4 
the possession of any drugs, and denied any knowledge of drug trafficking taking place at the properties on Park Street. Officers found two peach tablets during a search of Walker's person at the Ross County Jail.
 {¶ 10} A Ross County Grand Jury indicted Walker on one count of illegally conveying prohibited items onto the grounds of a detention facility, a third degree felony in violation of R.C. 2921.36, and one count of aggravated possession of drugs, i.e. Oxycodone a Schedule II drug, a fifth degree felony in violation of R.C. 2925.11.
 {¶ 11} Walker entered not guilty pleas and later moved to suppress the tablets as the product of an unconstitutional search. The trial court denied Walker's motion.
 {¶ 12} Walker then pled no contest to the charges. The court found him guilty as charged and sentenced him accordingly.
 {¶ 13} Walker appeals and asserts the following two assignments of error: I. "The trial court erred in holding that the search and seizure of Defendant-Appellant Antonio L. Walker at locations other than 152 Park St., Chillicothe, Ohio 45601 was within the scope of the search and seizure authorized by the warrant." And, II. "[T]he trial court erred in holding that there was sufficient probable cause to support the search of Defendant-Appellant at locations other than 152 Park St., Chillicothe, Ohio 45601."
 II. {¶ 14} Walker contends in both of his assignments of error that the trial court erred when it denied his motion to suppress because (1) the warrant did not authorize any officer to search and seize him away from 152 Park Street and (2) the municipal judge lacked probable cause to issue the warrant to search him. *Page 5 
 {¶ 15} Our review of a decision on a motion to suppress presents mixed questions of law and fact. State v. Hatfield (Mar. 11, 1999), Ross App. No. 98CA2426, citing State v. McNamara (Dec. 23, 1997), Athens App. No. 97 CA 16, citing United States v. Martinez (C.A.11, 1992),949 F.2d 1117, 1119. At a suppression hearing, the trial court is in the best position to evaluate witness credibility. State v. Dunlap (1995),73 Ohio St.3d 308, 314. Accordingly, we must uphold the trial court's findings of fact if the record supports them by competent, credible evidence. Id. We then conduct a de novo review of the trial court's application of the law to the facts. State v. Anderson (1995),100 Ohio App.3d 688, 691.
 A. {¶ 16} Walker contends in his first assignment of error that the trial court erred when it found that the second search warrant authorized the officers to search his person at any location. He asserts that the language of the warrant limited the scope of the search of his person to a specific location.
 {¶ 17} "The standard of review for determining whether a search remained within the scope of a warrant is de novo." State v.Carter, Seneca App. Co. 13-02-19, 2002-Ohio-4406, at ¶ 8, citingUnited States v. King (2000), 227 F.3d 732, 750.
 {¶ 18} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect the "[t]he right of the people to be secure * * * against unreasonable searches and seizures[.]" Both constitutional provisions further provide that "no warrants shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized." *Page 6 
 {¶ 19} Here, Walker does not dispute that the warrant "particularly" described him as required by the United States and Ohio Constitutions. Instead, he claims that the warrant language provided that the officers could only search his person when he was physically on the property at 152 Park Street.
 {¶ 20} "Where a person is the subject of a search warrant, that person may be searched any place where he is found unless the warrant specifies that the search be conducted at a specific location." Katz, et al., Baldwin's Ohio Practice Criminal Law (2008), Section 10:7.
 {¶ 21} Here, the second search warrant commanded the police "to enter, in the daytime, or in the nighttime, into the residence of Antoinio[sic] Walker, Cristian[sic] Brown and/ or a black female known as Desiree, 152 Park St, Chillicothe, OH 45601, being described as green single family dwelling located on the west side of Park St. with dark green trim and marked with the numbers 152 in black near the front of the residience[sic] including any outbuildings on the property and the persons of Antonio Walker, Christian Brown and a black female known as Desiree and any vehicles at the property owned or used by Antonio Walker, Christian Brown and/or the black female known as Desiree, and to execute a search of the said premises within three (3) days after the issuance of this warrant."
 {¶ 22} Walker focuses on the word "including," which follows the 152 Park St. residence description. He maintains that the police were authorized to search the residence, which included any outbuildings and himself. He argues that the word "including" limited the scope of the search of his person to the specific location of 152 Park Street. *Page 7 
 {¶ 23} The trial court considered the same argument and stated, "This search warrant allows the search of the residence known as 152 Park Street which includes outbuildings on the property. The language of this search warrant also includes a search of vehicles `at the property'. Lastly, the search warrant authorizes the search of the person of the defendant and others but does not specify that they must be on the property or `at the property'. Because there is no such specification, this Court cannot conclude that the use of the term `including' restricts the search of the person of the defendant only if he is on the property. The term `including' refers to outbuildings located on the property but not to the person of the defendant. Outbuildings, by their very nature, must be located on the property. However, the transient nature of a person is different. Therefore, this Court finds that the language of the second warrant authorizes the search of the defendant independently from his presence at the residence."
 {¶ 24} We agree with the trial court. The warrant authorized the search of the residence at 152 Park Street "including any outbuildingson the property and the persons of Antonio Walker, Christian Brown and a black female known as Desiree and any vehicles at the property owned or used by [the same three persons]." (Emphasis added.) The limiting words "on the property" and "at the property" immediately follow the words "outbuildings" and "vehicles" while no such limiting words immediately follow the three persons to be searched. Therefore, we find that the language of the warrant did not limit the scope of the search of Walker's person to 152 Park Street.
 {¶ 25} Turner does raise an additional issue related to the language of the search warrant, albeit he does so in the section of his brief that addresses whether probable *Page 8 
cause exists rather than the section related to the language of the warrant. "Affiant makes no statements that he believed probable cause existed at any other location. * * * It stands to reason that in this warrant, * * * the affiant's request and the judge's intention were to permit only the search of 152 Park Street." Turner's Brief at 12. The affidavit does indeed conclude with a paragraph that indicates there is probable cause to believe that criminal offenses have been and are being conducted at 152 Park Street address and that evidence of the same may be found at that address. However, as stated above, we find the language of the warrant did not limit the scope of the search of Walker's person to 152 Park Street. There is no language in the warrant that incorporates the attached affidavit. Just as language in the affidavit cannot be read into the warrant to salvage an otherwise invalid warrant; language in the affidavit cannot be read into the warrant to invalidate an otherwise valid warrant. See Groh v. Ramirez (2004), 540 U.S. 551,557.
 {¶ 26} Accordingly, we overrule Walker's first assignment of error.
 B. {¶ 27} Walker contends in his second assignment of error that the municipal judge erred when he issued the warrant because the affidavit failed to show probable cause to search him.
 {¶ 28} As stated earlier, the United States and Ohio Constitutions provide that "no warrants shall issue, but upon probable cause, supported by oath or affirmation[.]" A neutral and detached judge or magistrate may issue a search warrant only upon the finding of probable cause. United States v. Leon (1984), 468 U.S. 897, 914-915; Crim. R. 41(C). *Page 9 
 {¶ 29} Here, the municipal judge found probable cause to issue the second search warrant.
 {¶ 30} The Supreme Court of Ohio has set forth our standard of review. "The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."State v. George (1989), 45 Ohio St.3d 325, 329 (citations omitted). "A magistrate's determination of probable cause should be paid great deference by reviewing courts." Id.
 {¶ 31} Probable cause is a lesser standard of proof than that required for a conviction, such as proof beyond a reasonable doubt or by a preponderance of the evidence. State v. Young (2001),146 Ohio App.3d 245, 254, citing George at 329; Gates at 235. Probable cause only requires the existence of circumstances that warrant suspicion. Id. Thus, the standard for probable cause requires only a showing that a probability of criminal activity exists-not a prima facie showing of criminal activity. George at 329.
 {¶ 32} In deciding whether to issue a search warrant, the issuing magistrate must scrutinize the affidavit in support of the warrant. Then the magistrate must make a practical, common sense determination of whether "`there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" George at paragraph one of the syllabus, quoting Illinois v. Gates (1983), 462 U.S. 213, 238-39. A magistrate makes this determination by considering the totality of the circumstances. Gates at 233. This includes the veracity and basis of knowledge of persons supplying hearsay information in the affidavit.George at paragraph one of the syllabus. *Page 10 
 {¶ 33} In the trial court, Walker argued that the affidavit in support of the warrant only supported probable cause for the selling of crack cocaine at 152 Park Street. He cited State v. Brock (Sept. 21, 1989), Montgomery App. No. 11449 in support. However, the trial court found that, unlike the Brock case, the affidavit showed that Walker sold crack cocaine at more than one location. Specifically, the trial court indicated that the affidavit showed that Walker sold crack cocaine at 152 Park St., 166 Park St., the Chillicothe area, and "out of his vehicle identified as a maroon vehicle with temporary tags in the back window." In any event, we find the test announced by the Brock Court unpersuasive. The rigid demand that specific tests be satisfied is inconsistent with the totality of the circumstances approach used by both the U.S. and Ohio Supreme Courts. See Gates at 230-31; See, also,George at paragraph one of the syllabus. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates at 238.
 {¶ 34} Walker also contends that the affiant made no statement that he believed "probable cause existed at any other location[,]" and this somehow renders the warrant invalid. Walker's Brief at 12. Walker provides no citation for the proposition that the affiant must indicate that he personally believes probable cause exists to obtain a warrant to search or seize a particular person, place, or thing. Instead, as we stated earlier, the magistrate bears the responsibility for determining that probable cause exists before it issues a search warrant. The affiant simply must proffer sufficient facts to justify the existence of probable cause. The affiant's subjective belief that probable *Page 11 
cause does or does not exist is irrelevant. See Florida v. Royer (1983),460 U.S. 491, 507 ("but the fact that the officers did not believe there was probable cause * * * would not foreclose the State from justifying [the defendant's] custody by proving probable cause").
 {¶ 35} Walker further contends that the statements the trial court relied on to find probable cause away from the 152 Park Street address fail the Aguilar-Spinelli test.
 {¶ 36} Under the totality of the circumstances test, courts still look to the Aguilar-Spinelli cases to provide two important considerations when evaluating information in an affidavit gleaned from an informant. See Aguilar v. Texas (1964), 378 U.S. 108; Spinelli v.United States (1969), 393 U.S. 410. To make a valid finding of probable cause, a magistrate must be informed of: (1) the basis of the informant's knowledge; and (2) sufficient facts to establish either the informant's veracity or the reliability of the informant's information.Aguilar at 114.
 {¶ 37} With regard to the basis of an informant's information, "[a] common and acceptable basis for the informant's information is his personal observation of the facts or events described to the affiant."State v. Karr (1975), 44 Ohio St.2d 163, 165; United States v.Harris (1971), 403 U.S. 573. Moreover, the Supreme Court of the United States has found that an informant's first-hand observation and explicit, detailed description of alleged wrongdoing entitles his tip to greater weight than might otherwise be the case. Gates at 234.
 {¶ 38} Here, the affidavit contains statements of three informants who conducted controlled purchases at the two Park Street addresses. It includes several observations of those informants, which are that Walker was present at two of the transactions; he *Page 12 
had four ounces of crack cocaine on his person; and he had additional crack cocaine available in his car.
 {¶ 39} The most reliable information contained in the affidavit comes from the controlled purchases. In each of these transactions, the basis of knowledge is the first hand observation of the informant present at the transaction. The reliability of the informant is established through the searches the police conducted prior to the transactions, after the transactions, and the surveillance conducted during the transactions. In each case, the police confirmed that the informants had no contraband on themselves but possessed recorded currency. The police observed the informants enter certain buildings, and then confirmed the informants had obtained contraband within the buildings. Finally, the police searched the informants, and confirmed the informants had in fact turned over all of the contraband.
 {¶ 40} Two of the informants, who participated in the controlled purchases, indicated Walker was present at the transaction. The first informant indicated he was present during a controlled purchase at 152 Park Street. This informant also indicated Walker had four ounces of crack cocaine on his person. The second informant indicated Walker was present during a controlled purchase at 166 Park Street. This informant indicated another individual actually participated in the purchase, but the informant also indicated Walker "advised" he had additional crack cocaine outside in his vehicle.
 {¶ 41} The confidential informants made these statements after conducting controlled purchases, which because of the nature of the controlled purchases, bolsters their credibility and puts them in a position to directly observe and converse with Walker.Aguilar-Spinelli requires no more. *Page 13 
 {¶ 42} As a result, under Aguilar-Spinelli, we find that a magistrate could have reasonably relied upon the information in the affidavit related to the controlled transactions and the observations of the informants participating in the transactions. Therefore, we find that, under the totality of the circumstances, a reasonable person would be justified in concluding that there is a fair probability that contraband or evidence of a crime will be found on Walker's person, even away from the two Park Street addresses. Consequently, we find that the municipal judge had a substantial basis for concluding that probable cause existed.
 {¶ 43} Accordingly, we overrule Walker's second assignment of error.
 III. {¶ 44} For the above stated reasons, we find that the Ross County Common Pleas Court did not err when it overruled Walker's motion to suppress. Competent, credible evidence supports the trial court's findings involving the scope of the search and probable cause for the issuance of the second search warrant. Having overruled both of Walker's assignments of error, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED, and Appellant shall pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule *Page 14 
27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. and McFarland, J.: Concur in Judgment and Opinion. *Page 1